**FONTAINEBLEAU HOTEL CORP.,**
Appellant,

v.

**Florence Lustig CROSSMAN, a/k/a Florence Lustig, Trading and doing business as Florence Lustig, Appellee.**

No. 18339.

United States Court of Appeals
Fifth Circuit.

Feb. 3, 1961.

Rehearing Denied March 7, 1961.

Richard P. Kenney, Miami, Fla., Williams, Salomon, Kenney & Lindzon, Miami, Fla., for appellant.

Robert C. Ward, Miami, Fla., Ward & Ward, Miami, Fla., for appellee.

Before TUTTLE, Chief Judge, and RIVES and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

This case is before us for the second time. The plaintiff-appellee, Mrs. Florence Lustig Crossman, doing business as Florence Lustig, operates women's dress shops in Miami Beach, Palm Beach, and Bal Harbour, Florida, in New York City, and elsewhere. The defendant-appellant is the Fontainebleau Hotel Corporation of Miami Beach, Florida. In 1959 Mrs. Crossman sued Fontainebleau to restrain the defendant from evicting her and to obtain specific performance of a lease with an option to renew for five years. The lease was unsigned but, according to the complaint, was reduced to writing and represented the agreement of the parties. Fontainebleau moved to dismiss the suit on the ground that the lease did not comply with the Florida statute of frauds. Answering the motion, Mrs. Crossman argued that her possession of the premises, payment of the rent, and expenditure of more than $50,000 for improvements took the contract out of the statute of frauds. The district court granted Fontainebleau's motion to dismiss for failure to state a claim entitling the plaintiff to relief. On appeal, this Court reversed the district court and remanded the case, holding that the acts on which Mrs. Crossman relied in the complaint were sufficient to state a cause of action. Crossman v. Fontainebleau Hotel Corp., 5 Cir., 1959, 273 F.2d 720. On remand, the district court found that the equities were with the plaintiff and that she had "sustained the burden of proof * * * under the law of the case established in [this Court's earlier] opinion." Fontainebleau appeals from the judgment granting specific performance. We affirm.

I.

Fontainebleau argues that the district court erroneously applied as "the law of the case" this Court's holding on the first appeal. The error, so appellant urges, permeated the conduct of the trial and the findings; the trial judge assumed that the first opinion "settled everything".

928

"The rule of the law of the case is a rule of practice, based upon sound policy that when an issue is once litigated and decided, that should be the end of the matter." United States of America and Interstate Commerce Commission v. United States Smelting, Refining & Mining Co., 1950, 339 U.S. 186, 70 S.Ct. 537, 544, 94 L.Ed. 750. Moore states it: "When therefore, a federal court enunciates a rule of law to be applied in the case at bar * * * it establishes the law, which other courts owing obedience to it *must*, and which it itself will, normally apply to the same issues in subsequent proceedings in that case." 1 Moore, Federal Practice, ¶0.404 [1]. When an appellate court reverses and remands a case, it is the duty of the trial judge to follow the court's mandate in the light of the principles of law the court decided on the appeal. Ex parte Sibbald v. United States, 1838, 12 Pet. 488, 9 L.Ed. 1167; Munro v. Post, 2 Cir., 1939, 102 F.2d 686; 1 Moore Federal Practice, ¶0.404[10]. That is about as much as "the law of the case" means.

On the first appeal, we dealt with allegations in the complaint and a motion to dismiss. But we did not deal with them in a vacuum. In determining the sufficiency of the complaint we found it necessary to define the applicable legal principles and to weigh the complaint against those principles. The whole dispute then before us was legal: whether part performance, in the context of the complaint, was sufficient to take the lease out of the Florida Statute of Frauds. F.S.A. § 725.01 et seq. Deciding that it was, we remanded the case to give Mrs. Crossman her day in court. We made no factual determination, and could not, but we answered the legal questions to the best of our ability and they should be considered as settled—for purposes of the trial on remand. Eastern Cherokees v. United States, 1911, 225 U.S. 572, 582, 32 S.Ct. 707, 56 L.Ed. 1212; Roth v. Hyer, 5 Cir., 1944, 142 F.2d 227, certiorari denied 323 U.S. 712, 65 S.Ct. 38, 89 L.Ed. 573; see 3 Am.Jur., Appeal and Error, § 1240.

It is undoubtedly true that the law of the case does not include the determination of all questions that might arise within the issues. But, as will be seen in the discussion of the factual issues, we find nothing in the record to indicate that the trial judge, trapped in the toils of a verbal formula, misunderstood "the law of the case" or incorrectly applied it to settle questions developed during the trial that were not within the reach of the first Crossman-Fontainebleau opinion.

II.

The appellant's other arguments present, basically, the question: does substantial evidence support the trial judge's holding?

A. First, Fontainebleau argues strenuously that there was no meeting of the minds on the terms of the original lease and therefore no complete contract. The facts point in the other direction.

In January 1955 Ben Jaffe, an officer and stockholder of the Fontainebleau Hotel, got in touch with Mr. and Mrs. Crossman for the purpose of interesting her in opening a dress shop in the hotel lobby. Jaffe was the hotel officer authorized to negotiate leases for store space in the hotel. They reached a tentative oral agreement on the terms of a lease. Fontainebleau's attorney then prepared a written lease and submitted it to Mrs. Crossman. The Crossmans went over this lease, making notations in pencil to conform the written lease to the oral agreement, and met with Jaffe several times to discuss the pencilled changes. After the entire lease was discussed fully, including the notations in pencil, Jaffe wrote "OK" on the marked copy of the lease and asked the Crossmans if that was the agreement they wanted and would abide by. On their answering affirmatively that it was, Jaffe requested Mrs. Crossman to let him know the name in which she would take the lease; Mrs. Crossman operates her several stores under different names. Mrs. Crossman also okayed the lease. This instrument is Plaintiff's "Exhibit A". It was taken in

the name of "Florence Lustig of New York, Inc." Jaffe then advised the Crossmans that he would have his attorneys draw up what the parties termed a "clean lease". The trial judge found it was to be retyped only for the purpose of eliminating the pencilled notations and the unsightly appearance of the marked copy. Jaffe testified, however, that he approved some of the changes but did not approve others which required the approval of his lawyers.

The clean lease differed in two important respects from Exhibit A. (1) The clean lease provided that $5,000 Mrs. Crossman deposited with the hotel in January 1955 as security should be returned November 1, 1957; Exhibit A required the deposit to be returned November 1, 1956. (2) The clean lease did not grant Mrs. Crossman the exclusive right to sell all of the same items listed in Exhibit A. These and several other matters were the subject of correspondence between the attorneys for Mrs. Crossman and the attorneys for the hotel. Fontainebleau asserts that this correspondence shows there was no complete contract.

The testimony is undisputed that the parties agreed orally, agreed in the lease marked "Exhibit A", and finally agreed in the clean copy on the essential terms of the lease, including the unquestioned right of the lessee to an option to renew the lease for five years, commencing October 31, 1959, upon the same rent, payment, terms, and conditions as outlined in Exhibit A. This option is the basis for the lawsuit.

Immediately upon mutual approval of the pencilled lease, Mrs. Crossman employed as her architect and contractor the same architect and contractor employed by the Fontainebleau Hotel, at that time still unfinished. The court found that this was upon the "insistence and demands" of the defendant; the hotel was anxious to have the dress shop open for business as soon as possible in order to have its lobby attractive. Mrs. Crossman went into possession in February 1955, and opened for business March 11, 1955. Her improvements cost in excess of $50,000. The court found that from the time she took possession until the time of the litigation she paid the rent and complied with the terms of the lease.

■■ On these facts—some of course are disputed—we conclude there was ample evidence to support the trial judge's finding of an adequate meeting of the minds. The contract was completed when both parties approved the pencilled copy (Exhibit A). Nothing essential remained open. 1 Corbin, Contracts, § 29, § 31; 1 Williston, Contracts, § 27, § 28, § 28A; 12 Am.Jur., Contracts § 53. The attitude of the parties dissipates any doubt as to their having treated the lease as a completed contract. This attitude is reflected in the hotel's urging Mrs. Crossman to move in immediately, allowing her to put up a deposit of $5,000, encouraging her to spend $50,000 on improvements, and accepting the rent for several years. It seems most unlikely to us that either of the two parties in this litigation would have made moves from which he could not retreat—unless there had been a firm meeting of the minds.

■ B. The appellant contends that the lower court erred in identifying Florence Lustig Crossman with Florence Lustig of New York, Inc., a New York corporation. The lease was in the name of "Florence Lustig of New York Inc.", a New York corporation authorized to do business in Florida. The testimony and documentary evidence show that the parties were not concerned with the corporate entity or name of the lessee. The Hotel looked to Florence Lustig Crossman, the individual, to operate the dress shop and since March 11, 1955, she has occupied the premises, paid the rent, and followed the terms of the Exhibit A lease. The contracts and correspondence refer to Florence Lustig, Inc., Florence Lustig of New York, Inc., Florence Lustig, and Florence Lustig Crossman. The district court found that the parties

treated Mrs. Crossman and "Florence Lustig of New York, Inc.", as "inseparable and interchangeable"; that the hotel did not care under what name or entity she operated the dress shop as long as she operated it. The hotel gave checks to Mrs. Crossman twice a month, payable to her individually, for charges made by guests in the dress shop but billed through and collected by the hotel. The hotel sent its monthly rental statement in the name of Mrs. Florence Lustig Crossman, individually.

The exercise of the option to renew, however, *was* signed in the name of "Florence Lustig of New York, Inc.", by Florence Lustig, President. We attach no legal significance to this; it was to comply with the wording of the Exhibit A lease. The New York corporation has never been in possession of the premises, has never engaged actively in any business venture, and does not even have a bank account. Mrs. Crossman organized the corporation, owns all the stock in it, and was its principal officer. The district court's finding was clearly correct.

C. Varying its argument only slightly, the appellant contends that the district court erred in finding that Florence Lustig, *individually*, had a lease and option to renew, because she could not show that the corporation made any assignment to her of its right to renew. Since, however, the hotel looked to Mrs. Crossman—operating in whatever name —her exercise of the option was within the agreement of the parties.

D. The appellant contends that the lower court erred in finding that Mrs. Crossman individually took possession of the premises under the lease marked "Exhibit A". This contention is premised on the fact that the plaintiff moved in and started operating before this lease was submitted to her; since the typed lease came into existence February 24, 1955, improvements could not be made pursuant to it in January 1955. But the Exhibit A was the *basis* of her possession, reflecting the previous agreement of the parties reached in January. And, she took possession when she did at the Hotel's insistence, continuing in possession of the premises for five years, abiding by the terms of Exhibit A.

E. Finally, appellant contends that the lower court erred in decreeing specific performance of a lease that was unexecuted and unsigned and to which the plaintiff, according to its terms, was not even a party. A decision to order specific performance rests in the sound discretion of the court, to be determined from all the relevant facts. 29 Fla. Jurisprudence "Specific Performance" § 10; Mann v. Thompson, Fla.App. 1958, 100 So.2d 634; Todd et ux. v. Hyzer, 1944, 154 Fla. 702, 18 So.2d 888. Here, the evidence shows no intention on the part of the plaintiff to deceive the hotel, nor any prejudicial delay by her in asserting her rights. It shows no concern on the part of the hotel as to whether the plaintiff operated individually or in trade name or as a separate corporate entity. We cannot say that, in the circumstances of this case, the district court abused its discretion by ordering specific performance.

We summarize. On the first appeal we held that if Mrs. Crossman could prove a meeting of the minds, possession of the premises, the expenditure of a large sum for improvements, and the payment of rent—she had a valid contract, one of the terms of which was an option to renew. The district court found that she met the burden of proof. Substantial evidence supports the finding. We must, therefore, affirm the judgment below.