Hattie BRAZIER, Appellant,

v.

W. B. CHERRY et al., Appellees.

No. 18620.

United States Court of Appeals
Fifth Circuit.

July 7, 1961.

Rehearing Denied July 28, 1961.

D. L. Hollowell, Atlanta, Ga., C. B. King, Albany, Ga., Thurgood Marshall, Jack Greenberg, New York City, Norman C. Amaker, James M. Nabrit, III, New York City, of counsel, for appellant.

Charles J. Bloch, Ellsworth Hall, Jr., Macon, Ga., Bloch, Hall, Groover & Hawkins, Macon, Ga., of counsel, for appellees.

Before JONES and BROWN, Circuit Judges, and DE VANE, District Judge.

JOHN R. BROWN, Circuit Judge.

This case raises squarely the question whether death resulting from violation of the Civil Rights Statutes gives rise to a federally enforceable claim for damages sustained by the victim during his lifetime, by his survivors, or both. The District Court by sustaining a motion to dismiss for failure to state a claim, F.R.Civ.P. 12(b), 28 U.S.C.A., and for want of jurisdiction over the claim, answered this broadly in the negative. Brazier v. Cherry, D.C.M.D.Ga., 1960, 188 F.Supp. 817.

The complaint may be severely compressed since for these motions it was taken as true. The suit was by the surviving widow individually and as administratrix of the decedent's estate. Sued as defendants were the Sheriff of Terrell County, Georgia, the Chief of Police of Dawson (Terrell County), Georgia and three police officers plus an insurance company as surety on the Sheriff's official bond. It charged that about April 18, 1958, two of the police officers acting under color of state laws illegally arrested the decedent and while in their custody wilfully and brutally attacked him without cause. These actions were intended to, and did, deprive the decedent of the rights and privileges of being secure in his person, of due process and equal protection of the law. Thereafter on April 20, 1958, all five of the named defendant officers conspired to deprive decedent of rights secured by the Constitution and laws of the United States when, with intent to discriminate against him, they removed him illegally from jail and beat him to the point of unconsciousness. From these injuries decedent died a few days later on April 25, 1958. The decedent was gainfully employed at a monthly salary of $300 and had a life expectancy of 33.68 years. Damages in the total sum of $180,448 were sought.[1] The suit was filed nearly two years later, April 19, 1960.

■ Jurisdiction was formally invoked under 28 U.S.C.A. § 1331 as a suit with requisite jurisdictional amount arising under the Constitution and laws of the United States and also under 28 U.S. C.A. § 1343(1), (2), (3) and (4).[2] In connection with the latter the complaint made specific reference to 42 U.S.C.A.

---

1. The complaint formally broke down this demand as follows: (a) for "savagely brutal injuries * * * as well as his illegal arrest," $10,000; (b) "For general damages for the death" of decedent, $120,448; and (c) "Smart Damages for aggravation, suffering, mental anguish, and other punitive damages," $50,000.

2. "§ 1343. Civil rights and elective franchise
    "The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
    "(1) To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42;

"(2) To recover damages from any person who fails to prevent or to aid in preventing any wrongs mentioned in section 1985 of Title 42 which he had knowledge were about to occur and power to prevent;
    "(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.
    "(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote." As amended Sept. 3, 1954, c. 1263, § 42, 68 Stat. 1241; Sept. 9, 1957, Pub. L. 85–315, Part III, § 121, 71 Stat. 637.

§ 1983,[3] § 1981,[4] and § 1985(3).[5] While 42 U.S.C.A. § 1986 [6] was not expressly cited, the complaint, construed as it must be, Conley v. Gibson, 1957, 355 U.S. 41, at pages 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80, was sufficient to invoke it as well. Baldwin v. Morgan, 5 Cir., 1958, 251 F.2d 780, at pages 790, 791; Lewis v. Brautigam, 5 Cir., 1955, 227 F.2d 124, at pages 128, 55 A.L.R.2d 505.

The law has long and frequently stated and restated its apologia that claims for injury to the person die with the victim and that amelioration of the harshness of this principle must come from legislation. Van Beeck v. Sabine Towing Co., 1937, 300 U.S. 342, 57 S.Ct. 452, 81 L.Ed. 685, 1937 AMC 311; Emerson v. Holloway Concrete Products Co., 5 Cir., 1960, 282 F.2d 271, at page 274, certiorari denied 364 U.S. 941, 81 S.Ct. 459, 5 L.Ed. 2d 372.

We are dealing, therefore, with statutory interpretation. If that process were merely one of searching for an express, categorical provision, the case would quickly end, and for that matter, so would a considerable amount of the business of judging. For it has to be acknowledged that save for § 1986, note 6, supra, which refers specifically to "legal representatives" of the person injured and a one-year right of action for $5,000 damages for "death * * * caused by * * * wrongful act and neglect," the other sections do not expressly refer to actions for death or the survival of claims arising from civil rights violations. It then becomes a question whether in these statutes or re-

3. 42 U.S.C.A. § 1983. "Every person who, under color of any statute, ordinance, regulation, custom, or usage, or any State or Territory, subjects, or causes to be subjected, any citizen * * * to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." R.S. § 1979.

4. 42 U.S.C.A. § 1981. "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." R.S. § 1977.

5. 42 U.S.C.A. § 1985(3). "If two or more persons in any State or Territory conspire * * * . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; * * * in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of

the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators." R.S. § 1980.

6. 42 U.S.C.A. § 1986. "Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action;* and if the death of any party be caused by any such wrongful act and neglect, the legal representatives of the deceased shall have such action therefor, and may recover not exceeding $5,000 damages therein, for the benefit of the widow of the deceased, if there be one, and if there be no widow, then for the benefit of the next of kin of the deceased. But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued." R.S. § 1981.
   See note 12, infra, as to portion marked with *.

lated acts Congress has impliedly established a right of survival.[7]

Relevant to that search, of course, would be the question whether the statutes under scrutiny not only fail to prescribe survival but, on the contrary, reflect a purpose negativing survival. That approach epitomizes one of the arguments vigorously pressed in support of the District Court's judgment. The defendants point to the fact that in § 1983, note 3, supra, the civil sanction afforded prescribes that the violator "shall be liable to the *party injured.*" Likewise, they urge that § 1985(3), note 5, supra, accords the right of "an action for the recovery of damages" to the "party so injured or deprived." On these rather precise words it is then argued that this reflects a careful discriminating selection by Congress. Consequently, the argument runs, Congress purposefully extended the sanction of a civil damage suit only to the person who was the immediate physical victim of such violations. Additional strength to this contention is then found in § 1986, note 6, supra, which expressly recognizes survival and makes provision for suit after death. This is the assertion of the familiar and related rules that specific mention with respect to a specific situation impliedly excludes application generally or elsewhere.

Of these and similar approaches, we should give heed to the words of Mr. Justice Jackson for the Court in SEC v. Joiner Leasing Corp., 1943, 320 U.S. 344, at pages 350-351, 64 S.Ct. 120, at page 123, 88 L.Ed. 88. "Some rules of statutory construction come down to us from sources that were hostile toward the legislative process itself and thought it generally wise to restrict the operation of an act to its narrowest permissible compass. However well these rules may serve at times to aid in deciphering legislative intent, they long have been subordinated to the doctrine that courts will construe the details of an act in conformity with its dominating general purpose, will read text in the light of context and will interpret the text so far as the meaning of the words fairly permits so as to carry out in particular cases the generally expressed legislative policy." [8]

█ In that light—and without regard to the final question whether survival was adequately accorded by some statute—it defies history to conclude that Congress purposely meant to assure to the living freedom from such unconstitutional deprivations, but that, with like precision, it meant to withdraw the protection of civil rights statutes against the peril of death. The policy of the law and the legislative aim was certainly to protect the security of life and limb as well as property against these actions. Violent injury that would kill was not less prohibited than violence which would cripple.[9]

We have fresh evidence of the broad and sweeping aims of Congress with specific regard to § 1983. Monroe v. Pape, 1961, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed. 2d 492, makes an extensive re-examination of the legislative history and summarizes its purpose in this way. "The debates are long and extensive. It is abundantly clear that one reason the legislation was passed was to afford a federal right in federal courts because by

7. The term is here used broadly as an abbreviation to include both of the distinct claims for (a) the damages sustained by a decedent during his lifetime and (b) damages sustained by his survivors as a result of his death. See note 15, infra.

8. See note 8, 320 U.S. 344, at page 351, 64 S.Ct. at page 123, which cites Supreme Court cases rejecting for particular statutes the "ejusdem generis" and the "expressio unius est exclusio alterius" maxims.

9. Compare the criminal sanction, 18 U.S.C.A. § 242 for wilful deprivations paralleling the civil sanction under § 1983. Baldwin v. Morgan, 5 Cir., 1958, 251 F. 2d 780, at page 789, notes 10 and 11. The celebrated case of Screws v. United States, 1945, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495, 162 A.L.R. 1330, recognized criminal accountability for violations resulting in death of the victim. So, too, did Crews v. United States, 5 Cir., 1947, 160 F.2d 746.

reason of prejudice, passion, neglect, intolerance or otherwise, state laws might not be enforced and the claim of citizens to the enjoyment of rights, privileges, and immunity guaranteed by the Fourteenth Amendment might be denied by the state agencies." 365 U.S. 167, 81 S. Ct. 473, at page 480, 5 L.Ed.2d 492, at page 501. "It is no answer that the State has a law which if enforced would give relief. The federal remedy is supplementary to the State and the state remedy need not be first sought and refused before the federal one is invoked." 81 S.Ct. at page 482, 5 L.Ed.2d 492, at page 503.

█ With a clear congressional policy to protect the life of the living from the hazard of death caused by unconstitutional deprivations of civil rights, where then do we find the statutory machinery to give effective redress after death? We find it unnecessary to pass on the historically documented contention [10] of the plaintiff that § 1986, note 6, supra, by its incorporating reference to the "second section of this act" [11] grants a general right of action either "to the person injured" or "his legal representatives" in the broad terms of the first clause without the time or monetary limitations set forth in the *proviso*.[12] This is so because we are of the clear view that Congress adopted as federal law the currently effective state law on the general right of survival. This was done by § 1988.[13] With

10. This argument stresses remarks made by Representative Poland, a member of the Second Joint House Senate Conference Committee proposing a substitute for the Sherman Amendment, 15 U.S.C.A. § 1 et seq.; see Congressional Globe, 42nd Cong. 1st Sess. at 804; Representative Shellabarger, Manager of the bill in the House, ibid at 805; and Senator Edmunds, sponsor in the Senate, ibid at 820; see also ibid at 807.

On this thesis the plaintiff overcomes the one-year limitation period by contending that this refers to the "section" and not to the Act, other portions of which have been held to be controlled by the appropriate state statute of limitations, citing O'Sullivan v. Felix, 1914, 233 U.S. 318, 34 S.Ct. 596, 58 L.Ed. 980; Johnson v. Yeilding, D.C.N.D.Ala.1958, 165 F.Supp. 76. Countering this defendants urge that the phrase "this section" in § 1986, note 6, supra, occurs in the codification but not in the original Act, so that under the Codification Act, Vol. 1–4 U.S.C.A. pp. 3, 4, the original prevails. United States v. Hirsch, 1879, 100 U.S. 33, at page 35, 25 L.Ed. 539; United States v. Bowen, 1880, 100 U.S. 508, at page 513, 25 L.Ed. 631.

11. This phrase appears in the recodification, see note 6, supra, as "mentioned in section 1985 of this title." It incorporates § 1985(3), note 5, supra.

12. The portion appearing after * in present § 1986, note 6, supra, was enacted as follows: "Provided, That such action shall be commenced within one year after such cause of action shall have accrued; and if the death of any person shall be caused by any such wrongful act and neg-

lect, the legal representatives of such deceased person shall have such action therefor, and may recover not exceeding five thousand dollars damages therein, for the benefit of the widow of such deceased person, if any there be, or if there be no widow, for the benefit of the next of kin of such deceased person."

13. As recodified it now reads:

42 U.S.C.A. § 1988. "The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this chapter and Title 18, for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against the law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty." R.S. § 722. Acts Apr. 9, 1866, c. 31, § 3, 14 Stat. 27; May 31, 1870, c. 114, § 18, 16 Stat. 144.

This was originally enacted as § 3 of the Act of 1866. The declaration of substantive rights was contained in § 1 of the Act of 1866 which together with § 16 of the

respect to vindication of federally guaranteed civil rights, Congress provided that in all cases where the laws of the United States are "suitable to carry the same into effect" but are "not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law" then the "common law, as modified and changed by the constitution and statutes of the State" in which the federal court is sitting "so far as the same is not inconsistent with the Constitution and laws of the United States" are to "be extended to and govern * * * the trial and disposition" of the case.

In determining the impact of this section on our specific problem, we should bear in mind again that we are concerned solely with statutory interpretation. Without a doubt Congress has the constitutional power to spell out a comprehensive right of survival for civil rights claims. The question is therefore one of the everyday variety: has it done so by this means? Since legislation has been the invited response to ameliorate the harshness of the general rule against survival in the case of injury to person, it is certainly natural that, with respect to federally promulgated rights, the approach is hospitable toward finding a plausible, reasonable basis upon which to sustain an effective enforceable right. Certainly for the last two decades Judge Cardozo's words in Van Beeck v. Sabine Towing Co., supra, 300 U.S. 342 at pages 350–351, 57 S.Ct. 452, at page 456; set the tone. "Death statutes have their roots in dissatisfaction with the archaisms of the law which have been traced to their origin in the course of this opinion. It would be a misfortune if a narrow or grudging process of construction were to exemplify and perpetuate the very evils to be remedied. There are times when uncertain words are to be wrought into consistency and unity with a legislative policy which is itself a source of law, a new generative impulse transmitted to the legal system."

At every turn the Supreme Court, by drawing on available state legislation or giving a broad liberal effect to federal statutes has found a way to make compensation effective despite statutory language which might have made non-survival plausible, if not probable, during an earlier era. In Just v. Chambers, 1941, 312 U.S. 383, 668, 61 S.Ct. 687, 85 L.Ed. 903, the Court as to the related problem of survival of the cause of action after the death of the tortfeasor held that admiralty could call upon the local (Florida) law. In Cox v. Roth, 1955, 348 U.S. 207, 75 S.Ct. 242, 99 L.Ed. 260, the question was the survival of a claim under the Jones Act, 46 U.S.C.A. § 688, on the death of the tortfeasor. Since liability imposed against the vessel owner under the Jones Act rests on the incorporation of F.E.L.A., 45 U.S.C.A. § 51 et seq., the Court was faced squarely with the bald fact that the basic Act had no provision for survival against the tortfeasor. Nevertheless the dominant approach of the Court was that "* * * welfare legislation * * * is entitled to a liberal construction to accomplish its beneficent purposes." 348 U.S. 207, at page 210, 75 S.Ct. 242, at page 244. What could be said of the "extreme harshness of the old common-law rule abating actions on the death of the tortfeasor" [14] may be more than said as to the victim and his dependents. Likewise, may it be said that this rigor of the common law "flies in the face of the express congressional purpose to provide for" [14] protection of citizens against unconstitutional deprivation of their fundamental civil rights. The Court's awareness there that "literal application of the words of the F.E.L.A. would result in the denial of recovery against the personal representative of the tortfeasor" [14] was not permitted to "frustrate the congressional purpose." [14] Nor should it here.

Act of May 31, 1870 is presently codified as 42 U.S.C.A. § 1981, see note 4, supra. As to § 1988, see Monroe v. Pape, 1961, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492, at page 541, and note 79 (dissenting opinion) which sets out portions of its original text.

14. From 348 U.S. 207, at pages 209 and 210, 75 S.Ct. 242, at pages 244.

When we examine § 1988 in the dual spotlight of the historical major aim of the civil rights legislation, Monroe v. Pape, supra, and the tolerant, hospitable construction to ameliorate the hardships of the common law rule, there is ample basis for concluding that this statute fills the gap. In fact it is Georgia law, not federal law, which fills the gap.[15]

There is, first, nothing unusual about Congress adopting state law of the several states as federal law. It has done this, for example, in the Outer Continental Shelf Lands Act, 43 U.S.C.A. §§ 1331–1343 and especially § 1333(a) (2), Guess v. Read, 5 Cir., 1961, 290 F.2d 622. Likewise it has done so in the Federal Torts Claims Act where substantive liability of the Government is determined by state law. 28 U.S.C.A. §§ 1346(b), 2671–2680. Similarly, priority as between private contract liens and the Government's lien for federal taxes is governed in large part by state law on recording and perfection. 26 U.S.C.A. § 6323. By 18 U.S.C.A. § 13 Congress has, with respect to so-called special maritime and territorial jurisdiction of the United States under § 7, made an act a federal crime if it would have been punishable as a crime at the time of the act under the laws of the state, territory, possession or district where committed. Only will such adoptive statutes encounter constitutional impediments.[16]

And since the power of Congress to legislate would generally be coextensive with the power of the Judiciary to fashion substantive law within an admitted field of federal competence, there is a vast body of law furnishing additional evidence that Congress considered it proper to look to the states in supplying the necessary survival mechanisms to make the civil rights policies effectual. This body of law is that by which recovery for death from injuries occurring on navigable waters is allowed in admiralty on the basis of local state death statutes. This serves as a significant analogy for our problem of reading the congressional intention of § 1988. For the development of this working principle in an area where the substantive rights are within the Supremacy Clause, Kossick v. United Fruit Co., 1961, 365 U.S. 731, 81 S.Ct. 886, 6 L.Ed.2d 56, and therefore as "federal" as under the civil

---

15. § 3–505 (1958 pocket part) of the Georgia Code provides:

   "No action for a tort shall abate by the death of either party, when the wrongdoer received any benefit from the tort complained of; nor shall any action, or cause of action, for the recovery of damages for homicide, injury to person, or injury to property abate by the death of either party; but such cause of action, in case of the death of the plaintiff, shall, in the event there is no right of survivorship in any other person, survive to the personal representative of the deceased plaintiff; and in case of the death of the defendant, shall survive against said defendant's personal representative * * *."

   Section 105–1302 of the Georgia Code provides for a wrongful death action:

   "A widow, or, if no widow, a child or children, minor or *sui juris*, may recover for the homicide of the husband or parent, the full value of the life of the decedent, as shown by the evidence."
   [Act 1850, Cobb 476: Acts 1855–6 page 155; 1878–9, page 59; 1924, page 60.]
   "The full value of the life of the decedent, as shown by the evidence, is the full value of the life of the decedent without deduction for necessary or other personal expenses of the decedent had he lived."

   These Georgia statutes prescribe separate and distinct causes of action. See note 7, supra. One is for survival of the decedent's cause of action; the other for injury inflicted upon the survivor. Complete Auto Transit, Inc. v. Floyd, 1958, 214 Ga. 232, 104 S.E.2d 208, at page 213; Spradlin v. Georgia Ry. & Electric Co., 1913, 139 Ga. 575, 578, 77 S.E. 799, at page 800.

16. See, for example, Knickerbocker Ice Co. v. Stewart, 1920, 253 U.S. 149, 40 S.Ct. 438, 64 L.Ed. 834; State of Washington v. W. C. Dawson & Co., 1924, 264 U.S. 219, 44 S.Ct. 302, 68 L.Ed. 646, 1924 AMC 403, which involved unsuccessful congressional efforts adopting state compensation acts to overcome Southern Pacific Co. v. Jensen, 1917, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086; see also 50 Am.Jur., Statutes §§ 36–39 at 57–59.

rights statutes, has not been too troubled by whether the state law thereby adopted is substance or procedure. Indeed, while the conceptual status is far from clear, it would be doctrinaire to assert that this wholesome end rest upon the motion that nothing but state procedural law is thereby adopted.[17] The lesson that this judicial inventiveness teaches is, of course, that if one coordinate branch of the Federal Government conceives it to be desirable and permissible to draw on local state law to give its federally-declared rights effective value, then Congress may have done likewise here. And in doing so, it was not necessary that Congress either acted—or thought about it—in terms of substance, procedure, jurisdiction or all three.

Indeed, § 1988 uses sweeping language. It reflects a purpose on the part of Congress that the redress available will effectuate the broad policies of the civil rights statutes. If the federal law is "suitable to carry the [policy] into effect" resort to local law is not required. On our analysis federal law is not suitable, i. e., sufficient, since it leaves a gap for death in a substantive policy making no distinction between violent injuries and violent death. Since the federal statutory framework is, in the words of the statute, "deficient in the provisions necessary to furnish suitable remedies and punish offenses against" that law and policy, the state law is to be used to the extent that it is currently available to overcome these deficiencies.

There is nothing in this comprehensive declaration of a purpose to make a policy fully effective which would justify reading the single word "remedies" in a literal sense. It is hardly consistent with the diverse convictions so deeply felt and often spoken by ardent champions of the competing forces in the stormy struggle culminating in the Civil Rights Acts, see Monroe v. Pape, supra, to think that they were consciously legislating in terms of the mechanisms or devices generally associated in the lawyer's mind with procedure as such.[18] The term "suitable remedies" had a deeper meaning. Used, as it was in parallel with the phrase "and punish offenses against law," it comprehends those facilities available in local state law but unavailable in federal legislation, which will permit the full effectual enforcement of the policy sought to be achieved by the statutes. And in a very real sense the utilization of local death and survival

---

17. The most recent cases are Tungus v. Skovgaard, 1958, 358 U.S. 588, 79 S.Ct. 503, 3 L.Ed.2d 524; United New York & New Jersey Sandy Hook Pilots Ass'n v. Halecki, 1959, 358 U.S. 613, 79 S.Ct. 517, 3 L.Ed.2d 541; Hess v. United States, 1960, 361 U.S. 314, 80 S.Ct. 341, 4 L.Ed. 2d 305; Goett v. Union Carbide Co., 1960, 361 U.S. 340, 80 S.Ct. 357, 4 L. Ed.2d 341. See Thibodeaux v. J. Ray McDermott & Co., 5 Cir., 1960, 276 F. 2d 42, at page 47, note 6, and Emerson v. Holloway Concrete Products Co., 5 Cir., 1960, 282 F.2d 271, at page 281, notes 10 and 11 (dissenting), for a summary of the changing position of the several Justices.

18. As a statute incorporating merely state procedural mechanisms or devices § 1988 was, at least for actions at law, superfluous as a duplication upon the enactment of the Conformity Act. Section 5 of the Conformity Act of 1872, dealing with methods of instituting and carrying on litigations provided: "The practice, pleadings, and forms and modes of proceeding in other than equity and admiralty causes in the * * * district courts of the United States shall conform, as near as may be, to the practice * * * existing at the time in like causes in the courts of record of the State within which such * * * district courts are held, any rule of court to the contrary notwithstanding." 17 Stat. 196, 197 (1872), 28 U.S.C. § 724. As originally passed this section contained a proviso that "nothing herein contained shall alter the rules of evidence under the laws of the United States and as practiced in the courts thereof." This clause was dropped in 1878. U.S.Rev.Stat. § 914 (1878). See the discussion of the history of the Act in McCormick & Chadbourn, Federal Courts 484–487 (1957). The Conformity Act was repealed by the 1948 revision of Title 28 of U.S.C. because its provisions were in conflict with the Federal Rules and no longer had any force or effect. See 2 Moore, Federal Practice § 2.04 at 319–331.

statutes does not do more than create an effective remedy. This is so because the right is surely a federally protected one—the right to be free from deprivation of constitutional civil rights. The local death or survival statute adopted by reference in this fashion does not add to that substantive right. It merely assures that there will be a "remedy"—a way by which that right will be vindicated—if there is a violation of it.

■ One further thing should be emphasized. In enacting this legislation by reference to incorporate that of the several states currently in effect when and where a civil rights case would arise, Congress was under no restraint in enacting procedural, i. e., remedial, rather than substantive legislation or vice versa.[19] Consequently, it does not really matter whether in the eyes of the local law the local statute, rule or decision thus incorporated by reference is in the category of substance, or procedure, or mixed.[20] Congress adopts the whole "common law, as modified and changed by the constitution and statutes of the State" without regard to its technical local characterization. From a federal standpoint the only limitation upon the use of such adoptive state legislation, rule or decision is that it is suitable to carry the law into effect because other available direct federal legislation is not adapted to that object or is deficient in furnishing a fully effective redress. Thus § 1988 declares a simple, direct, abbreviated test: what is needed in the particular case under scrutiny to make the civil rights statutes fully effective?

The answer to that inquiry is then matched against (a) federal law and if it is found wanting the court must look to (b) state law currently in effect. To whatever extent (b) helps, it is automatically available, not because it is procedure rather than substance, but because Congress says so.

Thus, by a similar if not altogether parallel route, we give to § 1988 a reach equivalent to that accorded by the 8th Circuit recently in Pritchard v. Smith, 8 Cir., 1961, 289 F.2d 153, as it dealt with the related problems of survival of a civil rights claim after the death of the tortfeasor.

■ Since Georgia now provides both for survival of the claim which the decedent had for damages sustained during his lifetime as well as a right of recovery to his surviving widow and others for homicide, see note 15, supra, we need not differentiate between the two types of actions. See 16 Am.Jur., Death § 61 at 47–48. To make the policy of the Civil Rights Statutes fully effectual, regard has to be taken of both classes of victims. Section 1988 declares that this need may be fulfilled if state law is available. Georgia has supplied the law.

This makes it unnecessary to pass on the alternative grounds of jurisdiction on the basis of diversity against the surety of the Sheriff or pendent jurisdiction. The cause must therefore be reversed and remanded for a trial and other further consistent proceedings. Experience teaches us that we should reiterate that nothing said or unsaid, expressed or implied is a determination, holding or inti-

---

19. Congress, of course, was not concerned with any limitation on powers such as it placed on the Supreme Court rule-making power by the Enabling Act. 28 U.S.C.A. § 2072.

20. The defendants stress Barnes Coal Corp. v. Retail Coal Merchants Ass'n, 4 Cir., 1942, 128 F.2d 645, at page 648, and Gerling v. Baltimore & Ohio Railroad, 1894, 151 U.S. 673, at page 692, 14 S.Ct. 533, 38 L.Ed. 311; Michigan Central R. Co. v. Vreeland, 1913, 227 U.S.

59, at page 67, 33 S.Ct. 192, 57 L.Ed. 417, which speak in terms of survival as a matter of substantive right, not procedure. These really beg the question. As we view § 1988 it incorporates the right of survival under the state statute as part of the federal Act. It is the federal Act, utilizing state law as it does, which gives this *right*. Therefore it is of no consequence whether survival is classified as a matter of right or procedure.

mation, one way or the other, on the merits of the cause. That is for the trial court on the trial now to be had. Fontainebleau Hotel Corp. v. Crossman, 5 Cir., 1961, 286 F.2d 926, at page 928; United States v. Bowen, 5 Cir., 1961, 290 F.2d 40.

Reversed and remanded.

DE VANE, District Judge (dissenting).

Convinced as I am that District Judge Bootle decided the issues in this case correctly, I am compelled to dissent from the opinion of Circuit Court Judge BROWN, Judge Bootle passed directly upon every issue submitted to him by the parties in the case which did not include the issue upon which this Court holds our decision must turn.

The complaint filed in the case placed no reliance whatever upon 42 U.S.C.A. § 1988. The section was not mentioned in the pleadings. It was an afterthought on the part of counsel for appellant. However, giving full effect to this section, it cannot be held to create a cause of action in this Court based upon the Georgia Survival Statute. Such a holding by this Court constitutes nothing short of judicial legislation.

Sections 1981, 1983 and 1985(3), 42 U S.C.A. are the Civil Rights sections relied upon by plaintiff in the complaint filed herein to sustain this cause of action. Section 1981 creates no cause of action. Sections 1983 and 1985(3) create causes of action for "the party injured" and for no one else.

This is made doubly clear when consideration is given to 42 U.S.C.A. § 1986. This section provides that not only the wrongdoers but "every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do" may be joined as defendants and sued for the wrongful acts complained of. This section specifically provides that if the death of any party be caused by such wrongful act or neglect "the legal representatives of the deceased shall have such action therefor, and may recover not exceeding $5,000 damages therein, for the benefit of the widow of the deceased, if there be one, and if there be no widow, then for the benefit of the next of kin of the deceased."

This is the only section in the Civil Rights Act that provides for a survival action for the benefit of legal representatives of the deceased. This clearly is sufficient proof that Congress never intended to provide for the survival of a cause of action in case of death of the injured person other than that specified therein. This section goes further and provides that "no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued."

What this Court is doing in this case is circumventing the purpose and effect of this section by holding that Section 1988 gives to the injured parties the benefit of the Georgia law with reference to survival and by so doing completely avoids the provisions of Section 1986 limiting the amount of recovery specified therein and the statute of limitations as provided therein.

What is most disturbing to me with reference to this decision is that it is further proof of the fact that federal appellate courts are engaging too much in amending the Constitution and laws where, in their opinion, there is need for the amendment, instead of interpreting the laws as given us by the Constitution and the Congress.

I would affirm.