MARTIN, Circuit Judge,
dissenting:
I respectfully dissent from the Majority’s opinion because I cannot agree that there is “no inconsistency between Ala. Code § 6-5-462 and federal law.” To the contrary, I would conclude that the Alabama survivorship statute, to the extent that it permits the abatement of tort actions for wrongful conduct that immediately contributes to a person’s death, is inconsistent with both the abuse prevention and compensation goals underlying and embodied in 42 U.S.C. § 1983.
At about 5:15 p.m. on April 9, 2007, Eugene Gilliam (“Mr. Gilliam”) was pulled over for driving ten miles over the speed limit and not wearing a seat belt. A little over seven hours later, at 12:26 a.m. on April 10, 2007, he was dead at the age of twenty-two.[1] In this § 1983 action, Mr. Gilliam’s Estate (“the Estate”) claimed that Officer Camille Emmanuel (“Officer Emmanuel”) used excessive force against Mr. Gilliam in violation of the Fourth Amendment. A federal jury sitting in the Middle District of Alabama agreed. In rejecting the defendants’ motion for judgment as a matter of law at the close of the Estate’s evidence,[2] the District Court explained “that even though the tasing event was not the proximate cause of the death of Eugene Gilliam, ... the evidence supports the inference that it was at least a contributing factor into his death.” When the defendants renewed the motion at the close of the evidence, the District Court clarified “that the application of that provision of Alabama Code which ... would terminate Mr. Gilliam’s rights on his death seven hours after an incident if a wrongful death claim were not pursued would be contrary to the constitution and laws of the United States.” I agree with the District Judge, and therefore write in dissent.
I begin by observing that this case falls beyond the scope of the “narrow” holding of Robertson v. Wegmann, 436 U.S. 584, 594, 98 S.Ct. 1991, 1997, 56 L.Ed.2d 554 (1978). In Robertson, the § 1983 plaintiff died four years after the filing of his § 1983 action alleging prosecutorial abuse. 436 U.S. at 585-86, 98 S.Ct. at 1992-93. In that case, “it [was] agreed that [the plaintiffs] death was not caused by the deprivation of rights for which he sued under § 1983.” Id. at 594, 98 S.Ct. at *1051 1997. As such, the Supreme Court was careful in Robertson to “intimate no view ... about whether abatement based on state law could be allowed in a situation in which deprivation of federal rights caused death.” Id.; see also Carlson v. Green, 446 U.S. 14, 24, 100 S.Ct. 1468, 1474, 64 L.Ed.2d 15 (1980) (distinguishing Robertson, in part, because in Robertson “the plaintiffs death was not caused by the acts of the defendants upon which the suit was based”). Although Robertson was silent on the issue, the former Fifth Circuit concluded earlier that § 1983 embodied “a clear congressional policy to protect the life of the living from the hazard of death caused by unconstitutional deprivations of civil rights.” Brazier v. Cherry, 293 F.2d 401, 405 (5th Cir.1961);[3] see also McFadden v. Sanchez, 710 F.2d 907, 911 (2d Cir.1983) (“To whatever extent section 1988 makes state law applicable to section 1983 actions, it does not require deference to a survival statute that would bar or limit the remedies available under section 1983 for unconstitutional conduct that causes death.”).
This case requires us to decide for the first time whether the goals of deterrence and compensation require the survival of § 1983 actions where unlawful conduct immediately contributes to, but does not proximately cause, death. I would conclude that the goals of deterrence and compensation do not support drawing a line requiring survival where, as in Brazier, unlawful conduct proximately causes death but permitting abatement where, as here, unlawful conduct contributes to, but does not proximately cause, death.
First, with respect to compensation, there is no distinction between the situation where — as in Brazier, 293 F.2d at 402 — the unlawful conduct caused the victim’s death, and the situation here, where the unlawful conduct contributed to the victim’s death. In either case, the person who suffered the harm cannot be compensated. But Brazier rejected the argument that “Congress purposefully extended the sanction of a civil damage suit only to the person who was the immediate physical victim of such violations.” 293 F.2d at 404. Instead, the former Fifth Circuit explained that “it defies history to conclude that Congress purposely meant to assure to the living freedom from such unconstitutional deprivations, but that, with like precision, it meant to withdraw the protection of civil rights statutes against the peril of death.” Id. In considering the purpose and scope of § 1983, that court explained that “[v]iolent injury that would kill was not less prohibited than violence which would cripple.” Id.
We remain bound by Brazier because Robertson did nothing to overrule that case.[4] Robertson certainly emphasized the importance of the compensatory purpose of § 1983, but in so doing the Court explained that the personal representative of the original plaintiffs estate was not a close family member. 436 U.S. at 591-92, *1052 98 S.Ct. at 1995-96.[5] That is not the case here, where Mr. Gilliam’s personal representative is his mother. Nor do I find it logical to conclude that the simple fact of the victim’s death renders abatement consistent with the compensation goal of § 1983, because under that view, the compensation goal is always consistent with abatement upon death. If this were the Supreme Court’s view in Robertson, it could simply have said so. Instead, the Robertson Court’s analysis of the compensation goal considered the nature of the relationship between the person ultimately compensated and the victim of the unlawful act. 436 U.S. at 591-92, 98 S.Ct. at 1995-96. Here, unlike in Robertson, that relationship is one of mother and son. Thus, with respect to the compensation goal, this case is distinguishable from Robertson and indistinguishable from Brazier. As such, I believe that abatement of the action in this case would be inconsistent with the compensatory purpose of § 1983.[6]
Second, I do not believe that the survival of § 1983 actions through wrongful death statutes is, by itself, sufficient to satisfy the goal of abuse prevention. To be sure, at least that much is required to give effect to the deterrent purpose of § 1983 because a contrary rule would not only fail to deter abuse, but would actually encourage abuse by creating an incentive for those committing abuses under color of state law to kill, rather than merely injure, the victims of their unlawful conduct.[7] But the absence of an incentive is not the *1053 same as the presence of a deterrent. Surely, more is required to carry out the goal of abuse prevention embodied in § 1983. Specifically, those who commit unlawful acts under color of state law should not receive a windfall as a result of those same unlawful acts. The dissent in Robertson complained that “[a] defendant who has violated someone’s constitutional rights has no legitimate interest in a windfall release upon the death of the victim.” 436 U.S. at 603, 98 S.Ct. at 2001 (Blackmun, J., dissenting). While that reasoning did not prevail in Robertson, it seems highly persuasive where, as here, the violation contributed to the victim’s death. In holding otherwise, this Court now permits Officer Emmanuel to escape liability for her unlawful actions because of a windfall resulting, ultimately, from those very same unlawful actions. When considering the deterrent purpose of § 1983, it is insignificant to me that the unlawful acts merely contributed to, rather than proximately caused, that windfall, because proximate causation has nothing to do with intent or wilfulness.
The Majority asserts that “[tjhis case is ... an unusual one,” because it falls between provisions of Alabama law that would have permitted the Estate to maintain a § 1983 claim against Officer Emmanuel.[8] But even an unusual case can be inconsistent with one of the policy goals underlying § 1983. For example, in Jaco v. Bloechle, 739 F.2d 239 (6th Cir.1984), the Sixth Circuit confronted a case in which Ohio law would not provide for the survival of a § 1983 action because the victim, who was shot by a police officer, died instantly and therefore did not suffer a personal injury within his lifetime as required for the action to survive under Ohio law. Id. at 242 & n. 4. In concluding that “Ohio’s survivorship law [was] ... hostile to ‘the Constitution and laws of the United States,’ ” the Sixth Circuit explained that, “[s]urely, § 1983’s further purpose to discourage official constitutional infringement would be threatened if [the victim’s mother] were not permitted to champion her dead son’s civil rights.” Id. at 245. I believe the same is true here.
For all of these reasons, I would conclude that Alabama’s survivorship statute, to the extent that it would allow those acting under color of state law to escape § 1983 liability for unconstitutional conduct that immediately contributes to a person’s death, is inconsistent with the goals of compensation and abuse prevention underlying and embodied in § 1983. I would therefore affirm the judgment of the District Court.

. A thorough recitation of the relevant facts, viewed in the light most favorable to the Estate, can be found in the District Court’s order granting in part and denying in part the defendants’ motions for summary judgment. It bears mentioning, however, that the Estate claimed that Officer Emmanuel and Officer Gentry both used their tasers many times, often at the same time. Specifically, the Estate claimed that Officer Gentry fired his taser sixteen times for a total of 1:29 minutes out of a period of 2:05 minutes, while Officer Emmanuel fired her taser eleven times for a total of 2:16 minutes out of a period of 2:41 minutes.

. I agree with the Majority’s characterization of this portion of Officer Emmanuel’s motion as a motion under Federal Rule of Civil Procedure 12(b)(6), which can be made at trial under Rule 12(h)(2).

. In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

. I recognize that in Brazier, a pre-Robertson case, the former Fifth Circuit looked to Georgia's wrongful death statute, rather than to federal common law, to provide for survival under 42 U.S.C. § 1988. Brazier, 293 F.2d at 407. But Brazier is unambiguous in its conclusion, binding on this Court and still applicable after Robertson, that the policies underlying and embodied in § 1983 would not be satisfied by limiting recovery for § 1983 violations to “the immediate physical victim[s] of such violations.” Id. at 404.

. The issue in Robertson was whether a provision of Louisiana law that, for certain actions, did “not allow the deceased’s personal representative to be substituted as plaintiff,” but rather only allowed survival “in favor of a spouse, children, parents, or siblings" was inconsistent with the compensation policy of § 1983 where the deceased was not survived by “a spouse, children, parents, or siblings.” 436 U.S. at 591, 98 S.Ct. at 1995-96. In concluding that this provision was not inconsistent with the compensation policy of § 1983, the Supreme Court explained that "surely few persons are not survived by one of these close relatives, and in any event no contention [was] made ... that Louisiana’s decision to restrict certain survivorship rights in this manner is an unreasonable one.” Id. at 591-92, 98 S.Ct. at 1996.

. Nor am I persuaded by the Majority’s explanation that Alabama’s survivorship statute "generally serves the purposes of § 1983,” because "[i]n the vast majority of cases, applying Alabama law through § 1988(a) will compensate the constitutionally injured.” To be sure, the relevant Alabama statutes are not hostile to § 1983 actions in all or even most circumstances, but I believe they are hostile to § 1983 actions in circumstances where unlawful conduct contributes to, but does not proximately cause, a person’s death before he is able to file a § 1983 action challenging that conduct.

. It is clear to me that abatement under § 1988 may not be permitted where the unlawful conduct caused the victim’s death. Although the issue was not squarely presented in Brazier, where state law did not require abatement, 293 F.2d at 409, nor decided in Robertson, 436 U.S. at 594, 98 S.Ct. at 1997, other circuits have subsequently explained that § 1988 "does not require deference to a survival statute that would bar or limit the remedies available under section 1983 for unconstitutional conduct that causes death.” McFadden, 710 F.2d at 911; see also Jaco v. Bloechle, 739 F.2d 239, 244-45 (6th Cir.1984) ("The § 1983 objective of protecting individual civil liberties by providing compensation to the victim for an illegal deprivation of constitutional entitlements by state officers cannot be advanced, and is only undermined, by deferring to a state law which decrees abatement under circumstances where, as here, asserted constitutional infringements resulting from action taken under color of law caused instant death.”). The dearth of case law on this point is inevitable, because every state now provides an action for wrongful death, through which § 1983 actions may survive under § 1988. See Moragne v. States Marine Lines, Inc., 398 U.S. 375, 390, 90 S.Ct. 1772, 1782, 26 L.Ed.2d 339 (1970) ("In the United States, every State today has enacted a wrongful-death statute.”).

. This case is unusual partly because Alabama law is unusual in requiring abatement of unfiled tort actions. See Susan Randall, Only in Alabama: A Modest Tort Agenda, 60 Ala. L.Rev. 977, 986-88 (2009) ("Alabama is the only state in which a tort claim does not survive the death of the victim.”). While § 1988’s incorporation of state law naturally prevents nationwide uniformity in the abatement of § 1983 actions, we are obligated under § 1988 and Robertson not to defer to provisions of state law that are inconsistent with the purposes of § 1983.