OPINION
Defendant-Appellant, Michael G. Hamilton, appeals the Clark County Common Pleas Court's decision denying his petition for post-conviction relief. Hamilton was convicted of rape, abduction, assault and gross sexual imposition on October 17, 1991. He was sentenced to prison for an aggregate term of five to twenty-five years. Hamilton appealed his conviction to this court, his appellate counsel having filed an Anders brief, and Hamilton having filed a pro se brief alleging two assignments of error. At that time, Hamilton did not assert a claim for ineffective assistance of counsel. We overruled Hamilton's assignments of error and affirmed his conviction. State v.Hamilton (July 15, 1992), Clark App. No. 2882, unreported.
Hamilton filed a petition for post-conviction relief alleging ineffective assistance of counsel on September 30, 1992. Hamilton argued that his trial counsel was ineffective in failing to ensure that the results of the DNA testing were available at trial, in failing to object to the presentation of an expert witness who had previously been undisclosed, and in being unprepared for cross-examination of the expert witness. Additionally, Hamilton argued that the expert witness' medical testimony provided a misdiagnosis of the victim. The trial court dismissed the petition, and Hamilton appealed to this court. On December 29, 1993, the decision of the trial court was affirmed in part, reversed in part, and remanded for further proceedings. State v.Hamilton (Dec. 29, 1993), Clark App. No. 3015, unreported.
Hamilton subsequently filed a motion to reopen his direct appeal based upon a claim of ineffective assistance of appellate counsel. We granted the motion, but overruled the merits of his assigned errors and affirmed the judgment against him. State v.Hamilton (Oct. 25, 1996), Clark App. No. 2882, unreported.
On November 25, 1997, Hamilton filed an amended and supplemental petition for post-conviction relief alleging new claims of ineffective assistance of trial counsel, particularly, that counsel was inadequately prepared for trial. A hearing on the petition as amended and supplemented was held on December 11, 1997 and April 1, 1998. On November 15, 1998, the trial court denied the petition for post-conviction relief, and it issued its findings of fact and conclusions of law on February 26, 1999.
At the hearing, the trial court heard testimony from Dr. Emanuel Gus Mancy, a medical expert who had testified at Hamilton's original trial regarding the diagnosis of the victim's venereal disease, and Dr. Louis Schwab, a pediatrician who testified on behalf of Hamilton to refute Dr. Mancy's diagnosis. In its findings of fact the trial court stated the following:
 9. Dr. Schwab testified that he has had little recent experience in the diagnosis of this type of ailment. Any patient he suspects may be suffering from venereal disease is referred to another physician. His only real extensive experience with venereal disease was as a doctor in the United States Army in World War II.
 10. Dr. Mancy, on the other hand, has an extensive background and experience in his pediatric practice in the diagnosis and treatment of venereal disease in children.
(Doc. No. 131, p. 2)
In its conclusions of law, the trial court found that Hamilton had failed to produce evidence at the hearing on the issues of ineffective assistance of counsel during pretrial investigation and preparation. Hamilton's evidence was primarily on the claims of ineffective assistance of counsel for failing to be prepared for Dr. Mancy's testimony and for failing to rebut this testimony with contradictory expert testimony. The trial court's denial of Hamilton's petition was based upon Hamilton's failure to demonstrate ineffective assistance of his trial counsel and also upon its finding that the alleged failure would not have been prejudicial. The trial court focused its decision on the credibility of the two doctors, stating in pertinent part:
 The Court further finds the testimony of Dr. Mancy, even under extensive cross-examination, was very credible, and provided sufficient, reliable evidence toward Defendant's guilt. Whereas, the testimony of Dr. Schwab, though well intended, lacked in credibility.
Id. at 3.
Hamilton appeals the decision of the trial court asserting seven assignments of error. The State of Ohio failed to file a brief in this matter.
I.
 It is error for the Trial Court to overrule Defendant-Appellant's Petition for Post-Conviction Relief based upon finding the State's expert witness, who testified at Trial and at the hearing on the Petition, more credible than Defendant-Appellant's expert witness who testified at the hearing, where both witnesses agree that a negative throat culture for gonorrhea three days after the incident would be nearly conclusive proof that an alleged victim did not have oral sex with a man who has gonorrhea and where the medical record suppressed at Trial but introduced at the hearing indicates clearly that there was indeed a throat culture after three days and that it was negative for gonorrhea.
II.
 It is error for the Trial Court to overrule Defendant-Appellant's Petition for Post-Conviction Relief based upon finding the State's expert witness, who testified at Trial and at the hearing on the Petition, more credible that {sic} Defendant-Appellant's expert witness who testified at the hearing, where Defendant-Appellant's expert testifies that a culture for gonorrhea taken twenty-eight (28) days after an alleged incident of oral sex with a man who had gonorrhea can in no way be linked to the incident and where the State's expert witness at Trial conceals from the jury that the time lapse was twenty-eight (28) days and tells the jury that the positive test was "about that time."
III.
 It is error for the Trial Judge to overrule Defendant-Appellant's Petition for Post-Conviction Relief where at Trial the State's expert so framed his testimony (in contradiction of his own medical records) that the jury could draw but one conclusion, that being that the alleged victim contracted gonorrhea from the Defendant-Appellant, and where at a hearing on the Petition for Post-Conviction Relief the State's expert is reduced to asserting that such a connection is possible, cannot be ruled out, all this in a case wherein the State's detective stated at trial that there was no forensic evidence other than the Doctor's testimony about gonorrhea.
IV.
 It is error for the Trial Judge to overrule Defendant-Appellant's Petition for Post-Conviction Relief where it is clear from the Trial record that the thrust of the State's expert was to inform the jury that the alleged victim contracted gonorrhea from the Defendant-Appellant and where the Judge at the hearing on Defendant-Appellant's Petition for Post-Conviction Relief expresses the opinion that "I've not heard any question that he was there to give any expert opinion as to causation." and {sic} where the State's expert also testifies at the hearing that his interest was purely in the treatment of the alleged victim, yet the hearing Judge finds this Expert's testimony "reliable evidence toward Defendant's guilt."
V.
 It is error for the Trial Judge to overrule Defendant-Appellant's Petition for Post-Conviction Relief based on ineffectiveness of Trial Counsel, finding that "Defendant presented no evidence upon which the Court could find that the attorney failed to meet the standard required of him for the pretrial investigation and preparation" where the Defendant presented uncontroverted testimony at the hearing that he had specifically requested his Trial Counsel to look into the potential testimony of the State's expert regarding gonorrhea, to obtain testimony regarding the significance of the inconclusive results of DNA tests, to obtain dental records to refute bite claims by the alleged victim and to pursue witnesses to the alleged crime scene mentioned in the police reports.
VI.
 It is error for the Trial Judge to overrule Defendant-Appellant's Petition for Post-Conviction Relief where the major contention of the Defendant-Appellant in his Petition is that the State's expert witness testified at Trial in contradiction of his own medical records while the Trial Judge, in his findings of fact and conclusions of law, does not even notice the documents introduced by Defendant-Appellant at the hearing which contradict or qualify the testimony of the State's expert on each key point of his testimony.
VII.
 It is error for the Trial Judge to overrule Defendant-Appellant's Petition for Post-Conviction Relief where the Defendant-Appellant's expert presents to the Court at the hearing the requirement that, for forensic purposes, a positive culture for gonorrhea must be verified by two supporting tests to have any probative value and where no such supporting tests were introduced at trial.
In his seven assignments of error, Hamilton argues that the trial court erred in denying him a new trial at the conclusion of the post-conviction relief hearing. Hamilton's assignments of error challenge the trial court's finding that (1) Dr. Mancy was more credible than Dr. Schwab, (2) Dr. Mancy's testimony pertaining to the second throat culture provided "sufficient, reliable evidence" of Hamilton's guilt, and (3) Hamilton presented no evidence that trial counsel was ineffective for failing to be prepared for Dr. Mancy's testimony. Hamilton bases his arguments on the theory that had the prosecution disclosed the existence of the second throat culture, and had the results been admitted into evidence at trial, he would have been acquitted of the rape. As such, we will address all assignments of error together.
When a defendant asserts that the prosecution withheld exculpatory evidence, "the fact that such evidence was available to the prosecution and not submitted to the defense places it in a different category than if it had simply been discovered from a neutral source after trial." State v. Johnston (1988), 39 Ohio St.3d 48,60, quoting United States v. Kelly (C.A.D.C. 1986),790 F.2d 130, 135, citing United States v. Agurs (1976), 427 U.S. 97,111. By failing to disclose material exculpatory evidence, the prosecution violates the defendant's Fourteenth Amendment right to due process, irrespective of the good faith or bad faith of the prosecution. Johnston, supra, at paragraph four of the syllabus, citing Brady v. Maryland (1963), 373 U.S. 83, 87.
However, a new trial is not warranted unless the defendant can demonstrate that the evidence the prosecution suppressed was material. Id. Evidence is deemed to be material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Johnston, supra, at paragraph five of the syllabus, following United States v. Bagley (1985), 473 U.S. 667, 682. "A `reasonable probability' is a probability sufficient to undermine confidence in the outcome." Id., citing Bagley, supra, andPennsylvania v. Ritchie (1987), 480 U.S. 39, 57, jurisdictional holding limited by Jefferson v. City of Tarrant (1997),522 U.S. 75.
At the post-conviction relief hearing, Dr. Mancy provided medical testimony as to the symptoms, diagnosis and treatment of Regina Eskew, the victim in this case. Dr. Mancy, a long-practicing pediatrician with substantial experience in diagnosing and treating venereal diseases in children, testified at Hamilton's trial that he could not rule out the possibility of a relationship between the incident on October 24, 1990 during which Hamilton forced Eskew to have oral sex, and the subsequent positive gonorrhea throat culture taken on November 22, 1990. He maintained this position at the post-conviction relief hearing, despite the existence of the second negative throat culture obtained three or four days after the incident.
According to Dr. Mancy, at the time of the incident, and for many days thereafter, Eskew was on antibiotics. He explained how these antibiotics could possibly have prevented the growth of gonorrhea bacteria on the first two cultures. Hence, when Eskew began complaining of a sore throat three days after the incident, a positive throat culture might have been obtained. A negative culture, however, did not necessarily indicate Eskew did not have gonorrhea. For that reason, he believed the connection still existed between the incident and the positive gonorrhea culture taken one month later.
To the contrary, Dr. Schwab testified that the incubation period for gonorrhea is two to seven days, therefore the second negative culture was an indication of Hamilton's innocence. Dr. Schwab stated that it was a "grossly illogical conclusion" to make any connection between the incident on October 24 and the positive culture on November 22. Dr. Schwab further testified that, according to a report published in 1997 by the Committee from the American Academy of Pediatrics on Infectious Diseases, throat cultures to detect the presence of gonorrhea bacteria should be performed twice due to the high carrier rate of nonpathogenic gonorrhea. Because Eskew did not have two cultures taken in 1990, despite the possibility that it might not have been standard medical procedure at that time to order a confirmatory culture, Dr. Schwab could not make the medical conclusion that Eskew did have gonorrhea on November 22.
However, it is important to note that Dr. Schwab conceded that the antibiotic which Eskew had been taking "might, to some degree, have inhibited the growth of the gonorrhea in the culture medium; but it's impossible to say what the extent of that inhibitory effect would be * * *."
In addressing this conflicting testimony from the post-conviction relief hearing, it is well-established that "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v.DeHass (1967), 10 Ohio St.2d 230, 39 Ohio Op.2d 366, paragraph one of the syllabus. As this court has recognized, "[a]n appellate court abuses its discretion when it substitutes its judgment for that of the trier of fact as to the credibility of witnesses."State v. Kerr (Nov. 1, 1996), Montgomery App. No. 15648, unreported, citing State v. Walker (1978), 55 Ohio St.2d 208, 9 Ohio Op.3d 152. Thus, in the instant case, the trial court had the ultimate responsibility of determining the weight of the evidence and the credibility of the witnesses.
The trial court noted on the record that there were significant concerns regarding Dr. Schwab's capacity to testify as an expert witness. Although Dr. Schwab had experience in the diagnosis of gonorrhea, this experience occurred in 1942 during his first year at medical school, and several years later as a medical officer in the Army during World War II. Dr. Schwab admitted that he rarely diagnosed or treated gonorrhea or other venereal diseases in children in his pediatric practice, and if such a case arose, he referred the patient to either a gynecologist or the emergency room. In light of these facts, the trial court concluded that Dr. Schwab's testimony lacked credibility.
Given the above discussion, this court may not substitute its judgment for that of the trial court regarding the veracity and credibility of Dr. Mancy's and Dr. Schwab's post-conviction hearing testimony. Accordingly, we will evaluate whether Dr. Mancy's testimony supports the conclusion that Hamilton's rights had been violated.
In this case, Hamilton alleges that the prosecution suppressed the "exculpatory" evidence of the second negative throat culture which he claims was material under Brady, supra. In order to prevail on his petition for post-conviction relief, however, Hamilton needed to demonstrate a reasonable probability that he would have been acquitted on the rape charge had the prosecution provided the evidence in discovery. We cannot conclude that there is a reasonable probability that the outcome of the trial would have been different had the evidence of the second throat culture been disclosed to the defense.
At the outset, we note that a question remains whether defense counsel had knowledge of the second throat culture at trial. The following remarks were exchanged between Dr. Mancy and defense counsel during cross-examination:
 Q. Can you recall whether or not there was an additional culture done testing for gonorrhea aside from the two you've indicated?
A. No, I do not.
Q. Is it possible there was another one?
A. Possibly, yes.
Q. And that one was negative as well, wasn't it?
 A. I don't know, if I'm not aware of it, I don't know whether it was.
Regardless of whether defense counsel had knowledge of the second culture and its results, we cannot find that full disclosure of the evidence would have changed the outcome. During the post-conviction relief hearing, Dr. Mancy endured extensive cross-examination from defense counsel regarding the existence of this second throat culture and his opinion that Eskew's gonorrhea diagnosis on November 22, 1990 was consistent with the incident on October 24, 1990. Dr. Mancy's testimony did not contradict what he had stated at trial. He confirmed the existence of the second test, the results of which were negative for the presence of gonorrhea. This negative culture, Dr. Mancy explained, did not establish that Eskew did not have gonorrhea because the antibiotics she was taking at the time of the incident, through the time of the second culture, could have affected the bacteria growth on the culture.
Based upon the preceding discussion, we find the second culture was not indicative of Hamilton's innocence, and the evidence was not material under Johnston, supra. Had the prosecution fully disclosed this evidence prior to Hamilton's trial, we do not find a reasonable probability that the result of the proceedings would have been different because we do not find that the evidence was persuasive enough to undermine our confidence in the outcome of the trial. We further find that there does exist competent, credible evidence in the record to support the trial court's findings, which we will not disturb upon appeal. Accordingly, Hamilton's rights were not violated and trial counsel was not ineffective in his preparation for trial.
As a final matter, we note that in his fifth assignment of error, Hamilton also challenges the trial court's determination that no evidence was presented at the hearing to support Hamilton's claims of ineffective assistance of counsel. Hamilton argues that it was error for the trial court to disregard his testimony that his trial counsel had (1) failed to prepare for the potential testimony of Dr. Mancy, (2) failed to obtain evidence regarding the significance of the inconclusive results of the DNA tests, (3) failed to obtain dental records to refute bite claims by Eskew, and (4) failed to pursue witnesses from the alleged crime scene. Hamilton's testimony was brief and unsupported, and it was the duty of the trial court to determine the weight to be given to Hamilton's testimony and to determine if his testimony was credible. DeHass, supra. We must defer to the trial court's determination in this instance that Hamilton's testimony provided no credible evidence to support his claims.
By failing to demonstrate the facts claimed in his petition, Hamilton failed to prove that his rights were violated or that he received ineffective assistance of counsel. Thus, his assignments of error are overruled, and the trial court's decision is affirmed.
WOLFF, J., concurs.