JEFFERSON, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF JEFFERSON, DECEASED, ET AL. *v.* CITY OF TARRANT, ALABAMA

No. 96–957.   Argued November 4, 1997—Decided December 9, 1997

GINSBURG, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and O'CONNOR, SCALIA, KENNEDY, SOUTER, THOMAS, and BREYER, JJ., joined. STEVENS, J., filed a dissenting opinion, *post,* p. 84.

*Dennis G. Pantazis* argued the cause for petitioners. With him on the briefs was *Brian M. Clark.*

*John G. Roberts, Jr.,* argued the cause for respondent. With him on the brief were *Gregory G. Garre, Wayne Morse,* and *John W. Clark, Jr.*

JUSTICE GINSBURG delivered the opinion of the Court.

This case, still *sub judice* in Alabama, was brought to this Court too soon. We granted certiorari to consider whether the Alabama Wrongful Death Act, Ala. Code § 6–5–410 (1993), governs recovery when a decedent's estate claims, under 42 U. S. C. § 1983, that the death in question resulted from a deprivation of federal rights. We do not decide that issue, however, because we conclude that we lack jurisdiction at the current stage of the proceedings. Congress has limited our review of state-court decisions to "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had." 28 U. S. C. § 1257(a). The decision we confront does not qualify as a "final judgment" within the meaning of § 1257(a). The Alabama Supreme Court decided the federal-law issue on an interlocutory certification from the trial court, then remanded the cause for further proceedings on petitioners' remaining state-law claims. The outcome of those further proceedings could moot the federal question we agreed to decide. If the federal question does not become moot, petitioners will be free

to seek our review when the state-court proceedings reach an end. We accordingly dismiss the writ for want of a final judgment.

I

Petitioners commenced this action against the city of Tarrant, Alabama (City), to recover damages for the death of Alberta Jefferson. Ms. Jefferson, an African-American woman, died in a fire at her Tarrant City home on December 4, 1993. Petitioners' complaint, App. 1–11, alleges that the City firefighters did not attempt to rescue Ms. Jefferson promptly after they arrived on the scene, nor did they try to revive her when they carried her from her house. The complaint further alleges that these omissions resulted from "the selective denial of fire protection to disfavored minorities," id., at 6, and proximately caused Ms. Jefferson's death. The City, however, maintains that the Tarrant Fire Department responded to the alarm call as quickly as possible and that Ms. Jefferson had already died by the time the firefighters arrived.

Petitioners Melvin, Leon, and Benjamin Jefferson, as administrator and survivors of Alberta Jefferson, filed their complaint against Tarrant City in an Alabama Circuit Court on June 21, 1994. The Jeffersons asserted two claims under state law: one for wrongful death, and the other for the common-law tort of outrage. They also asserted two claims under 42 U. S. C. § 1983: one alleging that Alberta Jefferson's death resulted from the deliberate indifference of the City and its agents, in violation of the Due Process Clause of the Fourteenth Amendment, and the other alleging that Ms. Jefferson's death resulted from a practice of invidious racial discrimination, in violation of the Fourteenth Amendment's Equal Protection Clause.

In June 1995, the City moved for judgment on the pleadings on the § 1983 claims and for summary judgment on all claims. In its motion for judgment on the pleadings, the

City argued that the survival remedy provided by the Alabama Wrongful Death Act governed the Jeffersons' potential recovery for the City's alleged constitutional torts.[1] For this argument, the City relied on *Robertson* v. *Wegmann*, 436 U. S. 584, 588–590 (1978). In that case, we held that 42 U. S. C. § 1988(a) requires the application of state-law survival remedies in § 1983 actions unless those remedies are "'inconsistent with the Constitution and laws of the United States.'" The Alabama Supreme Court had interpreted the State's Wrongful Death Act as providing a punitive damages remedy only. See, *e. g.*, *Geohagen* v. *General Motors Corp.*, 279 So. 2d 436, 438–439 (1973). But § 1983 plaintiffs may not recover punitive damages against a municipality. See *Newport* v. *Fact Concerts, Inc.*, 453 U. S. 247 (1981). Hence, according to respondent, petitioners could obtain no damages against the City under § 1983.

The Alabama trial court denied the summary judgment motion in its entirety, and it denied in part the motion for judgment on the pleadings. As to the latter motion, the court ruled that, notwithstanding the punitive-damages-only limitation in the state Wrongful Death Act, the Jeffersons could recover compensatory damages upon proof that the City violated Alberta Jefferson's constitutional rights. The trial court certified the damages question for immediate review, and the Alabama Supreme Court granted the City per-

---

[1] The Alabama Wrongful Death Act provides, in relevant part:
"A personal representative may commence an action and recover such damages as the jury may assess in a court of competent jurisdiction within the State of Alabama, and not elsewhere, for the wrongful act, omission, or negligence of any person, persons, or corporation, his or their servants or agents, whereby the death of his testator or intestate was caused, provided the testator or intestate could have commenced an action for such wrongful act, omission, or negligence if it had not caused death." Ala. Code § 6–5–410(a) (1993).

mission to appeal from the denial of its motion for judgment on the pleadings.[2]

On the interlocutory appeal, the Alabama Supreme Court reversed. 682 So. 2d 29 (1996). Relying on its earlier opinion in *Carter* v. *Birmingham*, 444 So. 2d 373 (1983), the court held that the state Act, including its allowance of punitive damages only, governed petitioners' potential recovery on their § 1983 claims. The court remanded "for further proceedings consistent with [its] opinion." 682 So. 2d, at 31. Dissenting Justices Houston and Cook would have affirmed the trial court's ruling.

We granted certiorari to resolve the following question: "Whether, when a decedent's death is alleged to have resulted from a deprivation of federal rights occurring in Alabama, the Alabama Wrongful Death Act, Ala. Code § 6-5-410 (1993), governs the recovery by the representative of the decedent's estate under 42 U. S. C. § 1983?" 520 U. S. 1154 (1997). In its brief on the merits, respondent for the first time raised a nonwaivable impediment: The City asserted that we lack jurisdiction to review the interlocutory order of the Alabama Supreme Court. We agree, and we now dismiss the writ of certiorari as improvidently granted.

## II

From the earliest days of our judiciary, Congress has vested in this Court authority to review federal-question decisions made by state courts. For just as long, Congress has limited that power to cases in which the State's judgment is final. See Judiciary Act of 1789, § 25, 1 Stat. 85. The cur-

---

[2] The courts invoked Alabama Rule of Appellate Procedure 5(a), which allows a party to petition the Alabama Supreme Court for an appeal from an interlocutory order where the trial judge certifies that the order "involves a controlling question of law as to which there is substantial ground for difference of opinion, that an immediate appeal from the order would materially advance the ultimate termination of the litigation and that the appeal would avoid protracted and expensive litigation."

rent statute regulating our jurisdiction to review state-court decisions provides:

> "Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari where the validity of a treaty or statute of the United States is drawn in question or where the validity of a statute of any State is drawn in question on the ground of its being repugnant to the Constitution, treaties, or laws of the United States, or where any title, right, privilege, or immunity is specially set up or claimed under the Constitution or the treaties or statutes of, or any commission held or authority exercised under, the United States."   28 U. S. C. § 1257(a).

This provision establishes a firm final judgment rule.   To be reviewable by this Court, a state-court judgment must be final "in two senses: it must be subject to no further review or correction in any other state tribunal; it must also be final as an effective determination of the litigation and not of merely interlocutory or intermediate steps therein.   It must be the final word of a final court."   *Market Street R. Co.* v. *Railroad Comm'n of Cal.*, 324 U. S. 548, 551 (1945).   As we have recognized, the finality rule "is not one of those technicalities to be easily scorned.   It is an important factor in the smooth working of our federal system."   *Radio Station WOW, Inc.* v. *Johnson*, 326 U. S. 120, 124 (1945).

The Alabama Supreme Court's decision was not a "final judgment."   It was avowedly interlocutory.   Far from terminating the litigation, the court answered a single certified question that affected only two of the four counts in petitioners' complaint.   The court then remanded the case for further proceedings.   Absent settlement or further dispositive motions, the proceedings on remand will include a trial on the merits of the state-law claims.   In the relevant respect, this case is identical to *O'Dell* v. *Espinoza*, 456 U. S. 430

(1982) *(per curiam),* where we dismissed the writ of certiorari for want of jurisdiction. See *ibid.* ("Because the Colorado Supreme Court remanded this case for trial, its decision is not final 'as an effective determination of the litigation.'" (citation omitted)).

Petitioners contend that this case comes within the "limited set of situations in which we have found finality as to the federal issue despite the ordering of further proceedings in the lower state courts." *Ibid.* We do not agree. This is not a case in which "the federal issue, finally decided by the highest court in the State, will survive and require decision regardless of the outcome of future state-court proceedings." *Cox Broadcasting Corp.* v. *Cohn,* 420 U. S. 469, 480 (1975). Resolution of the state-law claims could effectively moot the federal-law question raised here. Most notably, the City maintains that its fire department responded promptly to the call reporting that Ms. Jefferson's residence was in flames, but that Ms. Jefferson was already dead when they arrived. On the City's view of the facts, its personnel could have done nothing more to save Ms. Jefferson's life. See App. 45–47. If the City prevails on this account of the facts, then any § 1983 claim will necessarily fail, however incorrect the Alabama Supreme Court's ruling, for the City will have established that its actions did not cause Ms. Jefferson's death.

Nor is this an instance "where the federal claim has been finally decided, with further proceedings on the merits in the state courts to come, but in which later review of the federal issue cannot be had, whatever the ultimate outcome of the case." *Cox Broadcasting Corp.* v. *Cohn,* 420 U. S., at 481. If the Alabama Supreme Court's decision on the federal claim ultimately makes a difference to the Jeffersons—in particular, if they prevail on their state claims but recover less than they might have under federal law, or if their state claims fail for reasons that do not also dispose of their federal claims—they will be free to seek our review once the state-

court litigation comes to an end. Even if the Alabama Supreme Court adheres to its interlocutory ruling as "law of the case," that determination will in no way limit our ability to review the issue on final judgment. See, *e. g., Hathorn* v. *Lovorn,* 457 U. S. 255, 261–262 (1982); see also R. Fallon, D. Meltzer, & D. Shapiro, Hart and Wechsler's The Federal Courts and the Federal System 642 (4th ed. 1996) ("If a state court judgment is not final for purposes of Supreme Court review, the federal questions it determines will (if not mooted) be open in the Supreme Court on later review of the final judgment, whether or not under state law the initial adjudication is the law of the case on the second state review."); R. Stern, E. Gressman, S. Shapiro, & K. Geller, Supreme Court Practice 104–105 (7th ed. 1993) (citing cases).

We acknowledge that one of our prior decisions might be read to support the view that parties in the Jeffersons' situation need not present their federal questions to the state courts a second time before obtaining review in this Court. See *Pennsylvania* v. *Ritchie,* 480 U. S. 39, 49, n. 7 (1987) (declining to require the petitioner "to raise a fruitless Sixth Amendment claim in the trial court, the Superior Court, and the Pennsylvania Supreme Court still another time before we regrant certiorari on the question that is now before us"). In *Ritchie,* we permitted immediate review of a Pennsylvania Supreme Court ruling that required the Commonwealth's Children and Youth Services (CYS) to disclose to a criminal defendant the contents of a child protective service file regarding a key witness. The Court asserted jurisdiction in that case because of the "unusual" situation presented: We doubted whether there would be any subsequent opportunity to raise the federal questions, see *ibid.,* and we were reluctant to put the CYS in the bind of either disclosing a confidential file or being held in contempt, see *id.,* at 49. *Ritchie* is an extraordinary case and we confine it to the precise circumstances the Court there confronted. We now clarify that *Ritchie* does not augur expansion of the excep-

tions stated in *Cox Broadcasting Corp.*, and we reject any construction of *Ritchie* that would contradict this opinion.

This case fits within no exceptional category. It presents the typical situation in which the state courts have resolved some but not all of petitioners' claims. Our jurisdiction therefore founders on the rule that a state-court decision is not final unless and until it has effectively determined the entire litigation. Because the Alabama Supreme Court has not yet rendered a final judgment, we lack jurisdiction to review its decision on the Jeffersons' § 1983 claims.

\*     \*     \*

For the reasons stated, the writ of certiorari is dismissed for want of jurisdiction.

*It is so ordered.*

JUSTICE STEVENS, dissenting.

In my opinion, the jurisdictional holding in *Pennsylvania v. Ritchie*, 480 U. S. 39 (1987), represented such a departure from our settled construction of the term "final judgment" in 28 U. S. C. § 1257(a) that it should be promptly overruled, see *id.*, at 72–78 (STEVENS, J., dissenting). Unless and until at least four other Members of the Court share that view, however, I believe its holding governs cases such as this.

In *Ritchie*, the Court held that a judgment of the Pennsylvania Supreme Court resolving a federal question was final even though the federal question could have been relitigated in the state court if the appeals had been dismissed, and even though it could have been raised in a second appeal to this Court after the conclusion of further proceedings in the state courts. The fact that law-of-the-case principles would have made it futile to relitigate the federal issue in the state courts provided a sufficient basis for this Court's decision to accept jurisdiction. Precisely the same situation obtains in

this case.[1]  Either the fact that further litigation of a federal issue in the state system would be futile provides a legitimate basis for treating the judgment of the State's highest court as final—as the Court held in *Ritchie*—or it is sufficient to defeat jurisdiction, as the Court concludes today.  I do not believe the Court can have it both ways.

Since *Ritchie* is still the law, I believe it requires us to take jurisdiction and to reach the merits.  The federal issue is not difficult to resolve.  Under 42 U. S. C. § 1988, the Alabama Wrongful Death Act permits the survival of petitioners' § 1983 claims.  Our decisions in cases such as *Smith* v. *Wade*, 461 U. S. 30 (1983), *Newport* v. *Fact Concerts, Inc.*, 453 U. S. 247 (1981), and *Carey* v. *Piphus*, 435 U. S. 247 (1978), make it perfectly clear that the measure of damages in an action brought under 42 U. S. C. § 1983 is governed by federal law.  Cf. *Sullivan* v. *Little Hunting Park, Inc.*, 396 U. S. 229, 239–240 (1969) (holding that, in a case arising

---

[1] Indeed, the Court's response to my dissent in *Ritchie* applies directly to the facts of this case:

"But as JUSTICE STEVENS' dissent recognizes, the Pennsylvania courts already have considered and resolved this issue in their earlier proceedings; if the Commonwealth were to raise it again in a new set of appeals, the courts below would simply reject the claim under the law-of-the-case doctrine.  Law-of-the-case principles are not a bar to this Court's jurisdiction, of course, and thus JUSTICE STEVENS' dissent apparently would require the Commonwealth to raise a fruitless Sixth Amendment claim in the trial court, the Superior Court, and the Pennsylvania Supreme Court still another time before we regrant certiorari on the question that is now before us.

"The goals of finality would be frustrated, rather than furthered, by these wasteful and time-consuming procedures.  Based on the unusual facts of this case, the justifications for the finality doctrine—efficiency, judicial restraint, and federalism, see *Radio Station WOW, Inc.* v. *Johnson*, 326 U. S. 120, 124 (1945); *post*, at 72—would be ill served by another round of litigation on an issue that has been authoritatively decided by the highest state court." *Pennsylvania* v. *Ritchie*, 480 U. S. 39, 49, n. 7 (1987).

under 42 U. S. C. § 1982, § 1988 provides "that both federal and state rules on damages may be utilized, whichever better serves the policies expressed in the federal statutes. . . . The rule of damages, whether drawn from federal or state sources, is a federal rule responsive to the need whenever a federal right is impaired"). Thus, the fact that the Alabama survival statute also purports to limit recovery to punitive damages in an action against a municipality is of no consequence. As a matter of federal law we have already decided that compensatory damages may be recovered in such a case, *Monell* v. *New York City Dept. of Social Servs.*, 436 U. S. 658 (1978); *Owen* v. *Independence*, 445 U. S. 622 (1980), and that punitive damages may not, *Newport, supra.* As long as state law allows the survival of petitioners' § 1983 action— as it undoubtedly does here—additional state-law limitations on the particular measure of damages are irrelevant.[2]

Accordingly, even though my preference would be to overrule *Ritchie* and to dismiss the appeal, my vote is to reverse the judgment of the Alabama Supreme Court.

---

[2] *Robertson* v. *Wegmann*, 436 U. S. 584 (1978), is not to the contrary. In *Robertson*, the applicable state law provided for a survivorship claim but allowed only certain parties to bring such a claim. This Court allowed the § 1983 action to abate pursuant to state law because the plaintiff was not an appropriate party to bring the suit. That holding does not bear on the question whether a state limitation on the measure of damages applies to a § 1983 claim.