[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-10670
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 26, 2011
JOHN LEY
CLERK

D.C. Docket No. 2:08-cv-00278-MEF-CSC

THE ESTATE OF:  EUGENE DONJUALL GILLIAM,
by and through his Personal Representative,
Cynthia Harmon Waldroup, Administratrix,

Plaintiff-Appellee,

versus

CITY OF PRATTVILLE, et al.,

Defendants,

CAMILLE EMMANUEL,
individually,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(April 26, 2011)

Before MARTIN, COX and BLACK Circuit Judges.

COX, Circuit Judge:

No language in 42 U.S.C. § 1983 provides for the survival of a civil rights action in favor of another upon the death of the injured party. Because the statute is silent or "deficient" in this respect, 42 U.S.C. § 1988(a) requires application of state survivorship law, provided that law is "not inconsistent with the Constitution and laws of the United States." Under the Alabama survivorship statute, Ala. Code § 6-5-462, unfiled personal injury claims do not survive the death of the injured party. Finding this statute "inconsistent with the Constitution and laws of the United States," the district court declined to apply it in this case, and instead fashioned a federal common law rule of survivorship. The case was tried to a jury, and resulted in a verdict and judgment for the decedent's estate. Because we conclude that Ala. Code § 6-5-462 is not inconsistent with the Constitution and laws of the United States, we reverse.

## I. BACKGROUND & PROCEDURAL HISTORY

One evening in April 2007, two City of Prattville, Alabama police officers–Brian Gentry and Camille Emmanuel–stopped Eugene Gilliam's vehicle for violating the speed limit. During the course of the stop, the officers found marijuana in Gilliam's pocket and attempted to arrest him. In the process, both officers tasered Gilliam multiple times. At trial, the facts about the amount of resistance the police officers encountered in trying to subdue Gilliam were disputed. Gilliam's estate

2

presented evidence that Gilliam did not struggle or resist at all. The officers testified that he forcibly resisted arrest and attempted to flee.

After the officers restrained Gilliam by using tasers, he complained of chest pains and breathing difficulties. The paramedics, who were called almost immediately, arrived within minutes and took Gilliam to the hospital. About seven hours later, Gilliam died. The state medical examiner performed an autopsy and listed "hypertensive cardiovascular disease consistent with dysrhythmia" as the final pathological diagnosis. He listed the cause of death as "hypertensive cardiovascular disease" and the manner of death as "natural." Using blood drawn from Gilliam an hour or so after the incident, a toxicology screen flagged his blood as positive for marijuana and cocaine.

About a year after Gilliam's death, Cynthia Waldroup, Gilliam's mother and personal representative of his estate, sued officers Gentry and Emmanuel.[1] The Estate alleged: (1) state law wrongful death claims against both officers; (2) § 1983 excessive force claims against both officers that specifically alleged death resulted from the use of force; and (3) § 1983 excessive force claims against both officers that did not allege death was the result of the use of force.

---

[1] The Estate also sued Taser International, Inc. and the City of Prattville. Taser International was dismissed as a party early in the litigation. As for the City, the district court granted summary judgment in its favor with respect to all claims. Those two entities are not parties in this appeal.

The two officers filed a motion for summary judgment and a motion in limine. Through both of these motions, the officers generally challenged the Estate's evidence as to whether the officers' firing of the taser was the proximate cause of Gilliam's death. Through their motion in limine, the officers sought to exclude the death causation testimony and reports of the Estate's two medical experts.

The district court granted the motion in limine, and excluded the death causation testimony and reports of the Estate's expert witnesses. Because the Estate had no other expert medical testimony to establish causation, the district court granted the officers' motion for summary judgment on the state law wrongful death claims and the § 1983 excessive force claims that alleged death resulted from the use of force. The court denied the officers' motion for summary judgment on the § 1983 excessive force claims that did not allege death was the result of the use of force.

The case went to trial against both officer Gentry and officer Emmanuel on the non-death § 1983 excessive force claims. At the close of the Estate's case and again at the close of the officers' case, counsel for the officers moved to dismiss the excessive force claims. They argued that Gilliam died prior to the filing of this lawsuit and thus the § 1983 excessive force claims had abated under Alabama law as

provided by Ala. Code § 6-5-462.[2]    The district court denied both motions, concluding that Alabama survivorship law should not be applied to this case because it would be "inconsistent with the Constitution and laws of the United States."[3]  The case was then presented to the jury.

The jury returned a defense verdict in favor of officer Gentry, but returned a verdict against officer Emmanuel in the amount of $30,000.  The district court entered final judgment against Emmanuel.  She now appeals that judgment, arguing that the district court erred in denying her pre-verdict motions because the § 1983 excessive force claims did not under Alabama law survive Gilliam's death.

---

[2]  On appeal, Emmanuel characterizes her pre-verdict motions as Federal Rule of Civil Procedure 50 motions.  This characterization is incorrect.  While Emmanuel did raise Rule 50 sufficiency of the evidence challenges as to the issue of excessive force–an issue that is not before us on appeal–Emmanuel's abatement motion is more properly characterized as a Rule 12(h)(2) motion, which permits a defendant to raise this legal defense "at trial."

[3]  In so concluding, the district court made a factual finding regarding the relationship between the officers' use of force and Gilliam's death.  The district court found that, even though the use of force was not the "proximate cause" of Gilliam's death, it was a "contributing factor" because his death occurred seven hours after the use of force.   Based on this finding, the court reasoned that the pre-death § 1983 claim could survive Gilliam's death. (Dkt. 140 at 7, 9-10.)

Despite this "contributing factor" finding, the claim that was submitted to the jury involved no allegation that excessive force either caused or contributed to Gilliam's death.  And, the jury heard no evidence regarding Gilliam's death, and the district court gave no instruction about death.

## II. STANDARD OF REVIEW

We review a district court's denial of a motion to dismiss de novo, applying the same standard as the district court. *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010); *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003).

## III. DISCUSSION

The issue in this case is whether a § 1983 excessive force claim survives in Alabama if the injured party dies before the lawsuit is filed, or abates pursuant to Ala. Code § 6-5-462. We stress at the outset that this case, in its present procedural posture, does not involve a claim that the officers' unconstitutional conduct caused the decedent's death. The state law wrongful death claims under Ala. Code § 6-5-410, and the § 1983 excessive force claims alleging that death was the result of the use of force, were both dismissed at the summary judgment stage because the Estate produced no admissible evidence that the officers' use of force caused the decedent's death.[4] Therefore, the only issue we address is whether a § 1983 excessive force

---

[4] The Estate could not establish causation because the district court excluded both of its medical experts under Federal Rule of Evidence 702. The court concluded that one expert's testimony was not reliable enough to be admitted because it relied solely on temporal proximity between the use of force and Gilliam's death to establish causation; the expert's opinion did not take into account Gilliam's prior drug use, preexisting conditions, or subsequent medical procedures. As to the other medical expert, the court concluded that he was not qualified to testify as an expert witness, as he did not have any expertise in the medical fields relevant to this case. The Estate does not challenge on this appeal the exclusion of this evidence.

6

claim that did not result in the decedent's death survives in Alabama or abates under

Ala. Code § 6-5-462.

By its terms, 42 U.S.C. § 1983 does not provide for the survival of civil rights

actions. Due to this "deficiency" in the statute, the survivorship of civil rights actions

is governed by 42 U.S.C. § 1988(a). *Robertson v. Wegmann*, 436 U.S. 584, 588-89,

98 S. Ct. 1991, 1994 (1978). That statute generally directs that, where federal law is

"deficient," the state law of the forum applies as long as it is "not inconsistent with

the Constitution and the laws of the United States." 42 U.S.C. 1988(a).[5]

The Supreme Court has interpreted § 1988(a) as requiring a "three-step

process" to determine the rules of decision applicable to civil rights claims. *Wilson

v. Garcia*, 471 U.S. 261, 267, 105 S. Ct. 1938, 1942 (1985) (superseded by statute on

---

[5] 42 U.S.C. § 1988(a) provides, in pertinent part:
> The jurisdiction in civil and criminal matters conferred on the district courts . . . for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause . . . ."

other grounds); *Burnett v. Grattan*, 468 U.S. 42, 47-48, 104 S. Ct. 2924, 2928 (1984); *Moore v. Liberty Nat'l Life Ins. Co.*, 267 F.3d 1209, 1214 (11th Cir. 2001). Courts must first look to federal law "so far as such laws are suitable to carry [the civil and criminal civil rights statutes] into effect." 42 U.S.C. § 1988(a). Second, if federal law is "not adapted to the object" or is "deficient in the provisions necessary to furnish suitable remedies and punish offenses," courts must apply the law of the forum state. *Id.* Third, if application of state law is "inconsistent with the Constitution and laws of the United States," courts must not apply state law. *Id.*

There is no dispute in this case regarding the first two steps of the analysis: The parties agree, as do we, that the failure of § 1983 to include a survivorship provision is not "suitable to carry [that statute] into effect" and is "deficient" in providing suitable remedies for civil rights violations. Indeed, the Supreme Court has definitively held that § 1983 is deficient in not providing for survivorship. *See Robertson,* 436 U.S. at 588, 98 S. Ct. at 1994; *see also Brazier v. Cherry*, 293 F.2d 401, 407-08 (5th Cir. 1961) (holding that § 1983 is deficient in not providing for survivorship and looking to Georgia's survivorship and wrongful death statutes to see if civil rights claim survives).[6] The dispute in this case concerns the third step:

---

[6] According to the dissent, our holding in this case conflicts with our binding precedent in *Brazier*. We see no conflict. The reason the § 1983 cause of action survived in *Brazier* is because the Georgia survivorship and wrongful death statutes required survival. *Brazier*, 293 F.2d at 409.

8

whether application of Alabama survivorship law is "inconsistent with the Constitution and laws of the United States."

The applicable Alabama survivorship law is Ala. Code § 6-5-462. Under that provision, "a deceased's unfiled tort claims do not survive the death of the putative plaintiff." *Bassie v. Obstetrics & Gynecology Assocs. of Northwest Ala., P.C.*, 828 So. 2d 280, 282 (Ala. 2002); *see also Cont'l Nat'l Indem. Co. v. Fields,* 926 So. 2d 1033, 1037 (Ala. 2005) ("As a general rule, causes of action in tort do not survive in favor of the personal representative of the deceased."); *Malcolm v. King,* 686 So. 2d 231, 236 (Ala. 1996) ("The general rule is that under Ala. Code 1975, § 6-5-462, an unfiled tort claim does not survive the death of the person with the claim.").[7] It is clear that if this Alabama survivorship statute applies, then Gilliam's § 1983 excessive force claim against Emmanuel cannot survive his death.

---

As a result, our holding in this case–which addresses a completely different state survivorship statute–does not conflict with *Brazier*.

[7] Ala. Code § 6-5-462 provides:
> In all proceedings not of an equitable nature, all claims upon which an action has been filed and all claims upon which no action has been filed on a contract, express or implied, and all personal claims upon which an action has been filed, except for injuries to the reputation, survive in favor of and against personal representatives; and all personal claims upon which no action has been filed survive against the personal representative of a deceased tort-feasor.

The Estate contends that Ala. Code § 6-5-462 is inconsistent with federal civil rights laws and thus the district court was correct in refusing to apply it and instead fashioning a federal common law rule of survival. Our analysis of whether the Alabama survivorship statute applies in this § 1983 action is guided by the Supreme Court's decision in *Robertson v. Wegmann*, 436 U.S. 584, 98 S. Ct. 1991 (1978).[8] In *Robertson*, the Supreme Court held that a Louisiana statute permitting malicious prosecution actions to survive only in favor of certain surviving family members is not "inconsistent" with federal civil rights law within the meaning of § 1988(a). *See id.* at 590-94, 98 S. Ct. at 1995-97. To determine whether state law is inconsistent with federal law within the meaning of § 1988(a), the Supreme Court teaches that courts must look to the text of the federal statutes and Constitutional provisions at issue as well as the policies expressed in them. *Id.* at 590, 98 S. Ct. at 1995. Two important policies underlying § 1983 include "compensation of persons injured by deprivation of federal rights and prevention of abuses of power by those acting under

---

[8] The dissent asserts that this case falls beyond the scope of the holding in *Robertson* because, in *Robertson*, the plaintiff's death was not caused by the acts of the defendant upon which the suit was based. In *Robertson*, the Supreme Court did note that it was not expressing a view on "whether abatement based on state law could be allowed in a situation in which deprivation of federal rights caused death." *Robertson*, 436 U.S. at 594, 98 S. Ct. at 1997. But, as we have stressed several times throughout the opinion, this case does not involve a claim that unconstitutional conduct *caused* death because that claim was dismissed at the summary judgment stage. If that claim did exist, then abatement would not be an issue because the claim would survive through application of the Alabama wrongful death statute, Ala. Code. § 6-5-410.

color of state law." *Id.* at 590-91, 98 S. Ct. at 1995.  Applying this framework, the Court found that the Louisiana statute did not conflict with the text of § 1983 or its underlying policies, even though application of the state statute abated the cause of action.  It said:

> A state statute cannot be considered "inconsistent" with federal law merely because the statute causes the plaintiff to lose the litigation. If success of the § 1983 action were the only benchmark, there would be no reason at all to look to state law, for the appropriate rule would then always be the one favoring the plaintiff, and its source would be essentially irrelevant. But § 1988 quite clearly instructs us to refer to state statutes; it does not say that state law is to be accepted or rejected based solely on which side is advantaged thereby.

*Id.* at 593, 98 S. Ct. at 1996-97.

Using the analytical approach established in *Robertson*, we conclude that Ala. Code § 6-5-462 is not inconsistent with federal law and therefore must apply in this case.  The Estate does not contend that the Alabama survivorship statute is inconsistent with the text of § 1983.  Nor could it.  As the Supreme Court has recognized, there is "nothing in [§ 1983] to indicate that a state law causing abatement of a particular action should invariably be ignored in favor of absolute survivorship." *Id.* at 590, 98 S. Ct. at 1995.  In fact, by its own terms, § 1983 grants the cause of action "to the party injured," suggesting that the action is personal to the

11

injured party. 42 U.S.C. § 1983. Thus, Alabama survivorship law is not "inconsistent" with the text of § 1983 itself.

Nor is Alabama survivorship law inconsistent with the policies underlying § 1983–the "compensation of persons injured by deprivation of federal rights and prevention of abuses of power by those acting under color of state law." *Robertson*, 436 U.S. at 591*,* 98 S. Ct. at 1995. To determine whether the Alabama survivorship statute is inconsistent with federal law, we must ask whether that statute, along with other Alabama statutes, generally serves the purposes of § 1983. In the vast majority of cases, applying Alabama law through § 1988(a) will compensate the constitutionally injured and impose liability on those state officials who violate the Constitution. First, when an injured party actually files a § 1983 action and later dies, that action will survive death. *See Georgia Cas. & Sur. Co. v. White*, 582 So. 2d 487, 491 (Ala. 1991) (noting that filed tort claims pending in court at time of injured party's death survive under § 6-5-462 while unfiled claims do not). So, when a § 1983 claim is actually filed prior to the victim's death, Alabama law provides compensation for the constitutional violation and imposes liability on the state official responsible for the unconstitutional conduct–a result consistent with the purposes of § 1983. Second, when a constitutional violation actually causes the injured party's death, a § 1983 claim can be asserted through the Alabama wrongful

12

death statute, Ala. Code. § 6-5-410.[9]  So, when a constitutional violation actually causes death, Alabama law provides compensation for the constitutional violation and imposes liability on the state official responsible for the death–a result consistent with the purposes of § 1983.[10]  Considering the relationship between the Alabama survivorship statute and the available remedies under Alabama law, we see no

---

[9]  The parties agree that § 1983 claims in which the constitutional violation caused death can be asserted through the Alabama wrongful death statute.  That proposition finds support in a number of reported cases, where Alabama's wrongful death statute, Ala. Code. § 6-5-410, has consistently been applied through § 1988 to actions under § 1983.  *See, e.g., City of Tarrant, Ala. v. Jefferson*, 682 So. 2d 29, 29-31 (Ala. 1996); *Weeks v. Benton*, 649 F. Supp. 1297, 1309 (S.D. Ala. 1986); *Brown v. Morgan County, Ala.*, 518 F. Supp. 661, 665 (N.D. Ala. 1981).

We note that the United States Supreme Court granted a writ of certiorari in *City of Tarrant* on the question of whether the Alabama wrongful death statute, which allows for punitive damages only, governs *recovery* by the personal representative of the decedent's estate under § 1983.  *Jefferson v. City of Tarrant, Ala.*, 522 U.S. 75, 77-78, 118 S. Ct. 481, 484 (1997).  The Court ultimately dismissed the case on jurisdictional grounds.  *Id.*  While it is clear that a § 1983 claim alleging that a constitutional violation caused the decedent's death can be asserted through the Alabama wrongful death statute, the kinds of damages that are recoverable are determined by federal law.  *See Gilmere v. City of Atlanta, Ga.*, 864 F.2d 734, 739 (11th Cir. 1989).

[10]  As a result, this case does not present the situation where state law does not allow a plaintiff to assert a § 1983 claim alleging that the defendant's unconstitutional conduct caused death.  *Cf. Jaco v. Bloechle*, 739 F.2d 239, 241-45 (6th Cir. 1984) (finding that Ohio survivorship statute and wrongful death statute do not allow plaintiff to assert § 1983 claim alleging death and thus Ohio law, which would have allowed no recovery at all, was "inconsistent" with federal policies underlying § 1983).  Clearly, if a state actor could escape § 1983 liability by killing off the victim, then the deterrent purposes of the statute would no longer exist.  But Alabama law does not pose this problem because the wrongful death statute, Ala. Code. § 6-5-410, provides for recovery when unconstitutional conduct causes death.

13

significant impairment of the compensatory and deterrent purposes of the federal civil rights laws.[11]

We recognize that the facts of this case are unusual. Gilliam, who died seven hours after the use of force, could not file a § 1983 claim that would have survived under Ala. Code § 6-5-462. At the same time, Gilliam's estate could not assert a § 1983 claim through the wrongful death statute, Ala. Code. § 6-5-410, because it could not produce admissible evidence that the use of force caused Gilliam's death. This case is, therefore, an unusual one, where application of Alabama law does not provide for survivorship. But, just because applying Alabama law causes the Estate to lose in this unusual case does not mean Alabama law is generally inconsistent with federal law. *See Robertson*, 436 U.S. at 593, 98 S. Ct. at 1996 ("A state statute cannot be considered 'inconsistent' with federal law merely because the statute causes the plaintiff to lose the litigation."). And, with no inconsistency between Alabama law and federal law, we cannot, as the dissent proposes, craft a highly specific federal

---

[11] We see almost no impairment of the deterrent purposes of § 1983. In order to find that Alabama's survivorship statute would influence a defendant's behavior, one would have to make some far-fetched assumptions. First, one would have to assume that the state official had the desire and ability to select a victim who would ultimately die from causes unrelated to the unconstitutional conduct (be it from pre-existing medical conditions, drug use, or other intervening acts). Second, the carefully-selected victim would then have to die fast enough from these causes so that he or she could not file a § 1983 claim. We are unwilling to make any such assumptions.

14

common law rule of survivorship that applies to the unique facts of this case.[12]  Under that analysis, almost every § 1983 claim would survive, even though § 1988(a) clearly instructs us to refer to an Alabama statute that does not provide for the survivorship of unfiled tort claims.  Because the Alabama survivorship statute is not inconsistent with federal law, we must apply the statute as written to the facts of this case.

The Estate argues that Alabama law is generally inhospitable to § 1983 claims because it does not provide for the survival of any unfiled tort actions.  The Estate points out that the Alabama survivorship statute is more restrictive on survivorship than the Louisiana statute in *Robertson*, which provided for the survival of most tort claims and simply limited the individuals who could maintain the survival action.  *Robertson*, 436 U.S. at 591, 98 S. Ct. at 1995.  Therefore, the Alabama survivorship statute, according to the Estate, is inconsistent with § 1983 because it "significantly restrict[s] the types of actions that survive."  *Id.* at 594, 98 S. Ct. 1997.

We are not persuaded.  *Robertson* requires that, in applying § 1988(a), the survivorship law of the forum state applies as long as it is not "inconsistent" with federal law.  As the Eighth Circuit has recognized, "*Robertson* does not require courts to compare the laws of one state with those of another state, or to ask whether

---

[12]  The dissent proposes that § 1983 claims should survive in Alabama when based on allegations that the unconstitutional conduct "immediately contributes to" but does not cause a person's death.

15

someone could benefit from survival of the action, or to use some as yet undefined measure to determine whether a state rule on the survival of actions is overly restrictive." *Parkerson v. Carrouth*, 782 F.2d 1449, 1454 (8th Cir. 1986). To be sure, application of state law under § 1988(a) does not turn on the reasonableness of that particular state law.[13] Our only inquiry is whether Alabama law, which mandates the nonsurvival of unfiled tort claims, is inconsistent with § 1983. Under that inquiry, we find no inconsistency. There is no indication that Ala. Code § 6-5-462 was intended to target § 1983 plaintiffs, or to reduce the deterrent effect of § 1983. The Alabama survivorship statute applies to all plaintiffs and all manner of torts, not simply those involved in a federal civil rights action. The statute simply applies the same survivorship rule to § 1983 plaintiffs that apply to any other tort plaintiff in Alabama. Therefore, we cannot agree that Alabama law is generally inhospitable to the survival of § 1983 actions.

We recognize that application of Alabama's survivorship law does not lead to uniform application of federal civil rights laws. For instance, had the events in this case occurred in Georgia instead of Alabama, Gilliam's § 1983 claim would have survived his death. *See* O.C.G.A. § 9-2-41 (providing for survival of decedent's

---

[13] The dissent seems to take a different view, noting that Alabama is the only state in which an unfiled tort claim does not survive the death of the victim. We express no view as to the relative worth of Alabama's survivorship law. We do not consider that to be the inquiry under § 1988(a).

16

cause of action). But this is the natural result under § 1988(a), which references state law and mandates that it will often apply in § 1983 litigation. As the Supreme Court has recognized, "[1988(a)'s] reliance on state law obviously means that there will not be nationwide uniformity[.]" *Robertson*, 436 U.S. at 593 n.11, 98 S. Ct. at 1997 n.11. Had Congress intended § 1983 lawsuits to survive a decedent's death no matter where the decedent was injured, it could have explicitly written this language into the law.[14] Congress has not done so. Instead, we are left to interpret § 1988(a) and apply state law as long as it is not inconsistent with federal law. Because there is no inconsistency between Ala. Code § 6-5-462 and federal law, that statute must apply in this case.

## IV. CONCLUSION

For these reasons, we conclude that the district court erred in denying Emmanuel's motions to dismiss based on the abatement of Gilliams's excessive force claims. When § 6-5-462 is applied to this action, which was not filed prior to the death of Eugene Gilliam, the excessive force claim against Emmanuel abates under Alabama law. The judgment entered against Cameille Emmanuel is reversed.

REVERSED.

---

[14] Congress certainly knows how to include survivorship provisions in federal statutes. *See* 42 U.S.C. § 1986 (providing survivorship for claims made pursuant to 42 U.S.C. § 1985).

MARTIN, Circuit Judge, dissenting:

I respectfully dissent from the Majority's opinion because I cannot agree that there is "no inconsistency between Ala. Code § 6-5-462 and federal law." To the contrary, I would conclude that the Alabama survivorship statute, to the extent that it permits the abatement of tort actions for wrongful conduct that immediately contributes to a person's death, is inconsistent with both the abuse prevention and compensation goals underlying and embodied in 42 U.S.C. § 1983.

At about 5:15 p.m. on April 9, 2007, Eugene Gilliam ("Mr. Gilliam") was pulled over for driving ten miles over the speed limit and not wearing a seat belt. A little over seven hours later, at 12:26 a.m. on April 10, 2007, he was dead at the age of twenty-two.[1] In this § 1983 action, Mr. Gilliam's Estate ("the Estate") claimed that Officer Camille Emmanuel ("Officer Emmanuel") used excessive force against Mr. Gilliam in violation of the Fourth Amendment. A federal jury sitting in the Middle District of Alabama agreed. In rejecting the defendants' motion for judgment as a

---

[1] A thorough recitation of the relevant facts, viewed in the light most favorable to the Estate, can be found in the District Court's order granting in part and denying in part the defendants' motions for summary judgment. It bears mentioning, however, that the Estate claimed that Officer Emmanuel and Officer Gentry both used their tasers many times, often at the same time. Specifically, the Estate claimed that Officer Gentry fired his taser sixteen times for a total of 1:29 minutes out of a period of 2:05 minutes, while Officer Emmanuel fired her taser eleven times for a total of 2:16 minutes out of a period of 2:41 minutes.

18

matter of law at the close of the Estate's evidence,[2] the District Court explained "that even though the tasing event was not the proximate cause of the death of Eugene Gilliam, . . . the evidence supports the inference that it was at least a contributing factor into his death." When the defendants renewed the motion at the close of the evidence, the District Court clarified "that the application of that provision of Alabama Code which . . . would terminate Mr. Gilliam's rights on his death seven hours after an incident if a wrongful death claim were not pursued would be contrary to the constitution and laws of the United States." I agree with the District Judge, and therefore write in dissent.

I begin by observing that this case falls beyond the scope of the "narrow" holding of Robertson v. Wegmann, 436 U.S. 584, 594, 98 S. Ct. 1991, 1997 (1978). In Robertson, the § 1983 plaintiff died four years after the filing of his § 1983 action alleging prosecutorial abuse. 436 U.S. at 585–86, 98 S. Ct. at 1992–93. In that case, "it [was] agreed that [the plaintiff's] death was not caused by the deprivation of rights for which he sued under § 1983." Id. at 594, 98 S. Ct. at 1997. As such, the Supreme Court was careful in Robertson to "intimate no view . . . about whether abatement based on state law could be allowed in a situation in which deprivation of federal

---

[2] I agree with the Majority's characterization of this portion of Officer Emmanuel's motion as a motion under Federal Rule of Civil Procedure 12(b)(6), which can be made at trial under Rule 12(h)(2).

rights caused death." Id.; see also Carlson v. Green, 446 U.S. 14, 24, 100 S. Ct. 1468, 1474 (1980) (distinguishing Robertson, in part, because in Robertson "the plaintiff's death was not caused by the acts of the defendants upon which the suit was based"). Although Robertson was silent on the issue, the former Fifth Circuit concluded earlier that § 1983 embodied "a clear congressional policy to protect the life of the living from the hazard of death caused by unconstitutional deprivations of civil rights." Brazier v. Cherry, 293 F.2d 401, 405 (5th Cir. 1961);[3] see also McFadden v. Sanchez, 710 F.2d 907, 911 (2d Cir. 1983) ("To whatever extent section 1988 makes state law applicable to section 1983 actions, it does not require deference to a survival statute that would bar or limit the remedies available under section 1983 for unconstitutional conduct that causes death.").

This case requires us to decide for the first time whether the goals of deterrence and compensation require the survival of § 1983 actions where unlawful conduct immediately contributes to, but does not proximately cause, death. I would conclude that the goals of deterrence and compensation do not support drawing a line requiring survival where, as in Brazier, unlawful conduct proximately causes death but

_____

[3] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

permitting abatement where, as here, unlawful conduct contributes to, but does not proximately cause, death.

First, with respect to compensation, there is no distinction between the situation where—as in Brazier, 293 F.2d at 402—the unlawful conduct caused the victim's death, and the situation here, where the unlawful conduct contributed to the victim's death. In either case, the person who suffered the harm cannot be compensated. But Brazier rejected the argument that "Congress purposefully extended the sanction of a civil damage suit only to the person who was the immediate physical victim of such violations." 293 F.2d at 404. Instead, the former Fifth Circuit explained that "it defies history to conclude that Congress purposely meant to assure to the living freedom from such unconstitutional deprivations, but that, with like precision, it meant to withdraw the protection of civil rights statutes against the peril of death." Id. In considering the purpose and scope of § 1983, that court explained that "[v]iolent injury that would kill was not less prohibited than violence which would cripple." Id.

We remain bound by Brazier because Robertson did nothing to overrule that case.[4] Robertson certainly emphasized the importance of the compensatory purpose

---

[4] I recognize that in Brazier, a pre-Robertson case, the former Fifth Circuit looked to Georgia's wrongful death statute, rather than to federal common law, to provide for survival under 42 U.S.C. § 1988. Brazier, 293 F.2d at 407. But Brazier is unambiguous in its conclusion, binding

21

of § 1983, but in so doing the Court explained that the personal representative of the original plaintiff's estate was not a close family member. 436 U.S. at 591–92, 98 S. Ct. at 1995–96.[5] That is not the case here, where Mr. Gilliam's personal representative is his mother. Nor do I find it logical to conclude that the simple fact of the victim's death renders abatement consistent with the compensation goal of § 1983, because under that view, the compensation goal is *always* consistent with abatement upon death. If this were the Supreme Court's view in Robertson, it could simply have said so. Instead, the Robertson Court's analysis of the compensation goal considered the nature of the relationship between the person ultimately compensated and the victim of the unlawful act. 436 U.S. at 591–92, 98 S. Ct. at 1995–96. Here, unlike in Robertson, that relationship is one of mother and son. Thus, with respect to the compensation goal, this case is distinguishable from Robertson and indistinguishable from Brazier. As such, I believe that abatement of

on this Court and still applicable after Robertson, that the policies underlying and embodied in § 1983 would not be satisfied by limiting recovery for § 1983 violations to "the immediate physical victim[s] of such violations." Id. at 404.

[5] The issue in Robertson was whether a provision of Louisiana law that, for certain actions, did "not allow the deceased's personal representative to be substituted as plaintiff," but rather only allowed survival "in favor of a spouse, children, parents, or siblings" was inconsistent with the compensation policy of § 1983 where the deceased was not survived by "a spouse, children, parents, or siblings." 436 U.S. at 591, 98 S. Ct. at 1995–96. In concluding that this provision was not inconsistent with the compensation policy of § 1983, the Supreme Court explained that "surely few persons are not survived by one of these close relatives, and in any event no contention [was] made . . . that Lousiana's decision to restrict certain survivorship rights in this manner is an unreasonable one." Id. at 591–92, 98 S. Ct. at 1996.

the action in this case would be inconsistent with the compensatory purpose of § 1983.[6]

Second, I do not believe that the survival of § 1983 actions through wrongful death statutes is, by itself, sufficient to satisfy the goal of abuse prevention. To be sure, *at least* that much is required to give effect to the deterrent purpose of § 1983 because a contrary rule would not only fail to deter abuse, but would actually encourage abuse by creating an incentive for those committing abuses under color of state law to kill, rather than merely injure, the victims of their unlawful conduct.[7] But

---

[6] Nor am I persuaded by the Majority's explanation that Alabama's survivorship statute "generally serves the purposes of § 1983," because "[i]n the vast majority of cases, applying Alabama law through § 1988(a) will compensate the constitutionally injured." To be sure, the relevant Alabama statutes are not hostile to § 1983 actions in all or even most circumstances, but I believe they are hostile to § 1983 actions in circumstances where unlawful conduct contributes to, but does not proximately cause, a person's death before he is able to file a § 1983 action challenging that conduct.

[7] It is clear to me that abatement under § 1988 may not be permitted where the unlawful conduct caused the victim's death. Although the issue was not squarely presented in Brazier, where state law did not require abatement, 293 F.2d at 409, nor decided in Robertson, 436 U.S. at 594, 98 S. Ct. at 1997, other circuits have subsequently explained that § 1988 "does not require deference to a survival statute that would bar or limit the remedies available under section 1983 for unconstitutional conduct that causes death." McFadden, 710 F.2d at 911; see also Jaco v. Bloechle, 739 F.2d 239, 244–45 (6th Cir. 1984) ("The § 1983 objective of protecting individual civil liberties by providing compensation to the victim for an illegal deprivation of constitutional entitlements by state officers cannot be advanced, and is only undermined, by deferring to a state law which decrees abatement under circumstances where, as here, asserted constitutional infringements resulting from action taken under color of law caused instant death."). The dearth of case law on this point is inevitable, because every state now provides an action for wrongful death, through which § 1983 actions may survive under § 1988. See Moragne v. States Marine Lines, Inc., 398 U.S. 375, 390, 90 S. Ct. 1772, 1782 (1970) ("In the United States, every State today has enacted a wrongful-death statute.").

23

the absence of an incentive is not the same as the presence of a deterrent. Surely, more is required to carry out the goal of abuse prevention embodied in § 1983. Specifically, those who commit unlawful acts under color of state law should not receive a windfall as a result of those same unlawful acts. The dissent in Robertson complained that "[a] defendant who has violated someone's constitutional rights has no legitimate interest in a windfall release upon the death of the victim." 436 U.S. at 603, 98 S. Ct. at 2001 (Blackmun, J., dissenting). While that reasoning did not prevail in Robertson, it seems highly persuasive where, as here, the violation contributed to the victim's death. In holding otherwise, this Court now permits Officer Emmanuel to escape liability for her unlawful actions because of a windfall resulting, ultimately, from those very same unlawful actions. When considering the deterrent purpose of § 1983, it is insignificant to me that the unlawful acts merely contributed to, rather than proximately caused, that windfall, because proximate causation has nothing to do with intent or wilfulness.

The Majority asserts that "[t]his case is . . . an unusual one," because it falls between provisions of Alabama law that would have permitted the Estate to maintain a § 1983 claim against Officer Emmanuel.[8] But even an unusual case can be

---

[8] This case is unusual partly because Alabama law is unusual in requiring abatement of unfiled tort actions. See Susan Randall, Only in Alabama: A Modest Tort Agenda, 60 Ala. L. Rev. 977, 986–88 (2009) ("Alabama is the only state in which a tort claim does not survive the death of

inconsistent with one of the policy goals underlying § 1983. For example, in Jaco v. Bloechle, 739 F.2d 239 (6th Cir. 1984), the Sixth Circuit confronted a case in which Ohio law would not provide for the survival of a § 1983 action because the victim, who was shot by a police officer, died instantly and therefore did not suffer a personal injury within his lifetime as required for the action to survive under Ohio law. Id. at 242 & n.4. In concluding that "Ohio's survivorship law [was] . . . hostile to 'the Constitution and laws of the United States,'" the Sixth Circuit explained that, "[s]urely, § 1983's further purpose to discourage official constitutional infringement would be threatened if [the victim's mother] were not permitted to champion her dead son's civil rights." Id. at 245. I believe the same is true here.

For all of these reasons, I would conclude that Alabama's survivorship statute, to the extent that it would allow those acting under color of state law to escape § 1983 liability for unconstitutional conduct that immediately contributes to a person's death, is inconsistent with the goals of compensation and abuse prevention underlying and embodied in § 1983. I would therefore affirm the judgment of the District Court.

---

the victim."). While § 1988's incorporation of state law naturally prevents nationwide uniformity in the abatement of § 1983 actions, we are obligated under § 1988 and Robertson not to defer to provisions of state law that are inconsistent with the purposes of § 1983.